John R. Gibson, Circuit Judge, filed opinion concurring in part and dissenting in part.

**Lorraine POLASKI, et al., Appellees,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Appellant.**

No. 84–5085.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1984.

Decided Dec. 31, 1984.

Rehearing and Rehearing En Banc Denied April 16, 1985.

Howard Scher, JD, Deborah R. Kant, JD, William Kanter, JD and Jason Baron, HHS, Washington, D.C., for appellant.

Mary G. Grau, Minneapolis, Minn., for appellees.

Before HEANEY, JOHN R. GIBSON and FAGG, Circuit Judges.

HEANEY, Circuit Judge.

The Secretary of Health and Human Services appeals from a district court order granting a preliminary injunction to a class of plaintiffs seeking social security disability benefits. For the reasons set forth below, we remand for further proceedings.

## I. BACKGROUND.

For several months a dispute has raged in this and other Circuits on the question of whether the Secretary of Health and Human Services (Secretary) has been properly construing the Social Security Act, particularly with respect to persons who claim to be disabled because of pain and with respect to persons whose disability benefits have been terminated. On January 20, 1984, Lorraine Polaski filed a complaint in federal district court for the District of Minnesota, seeking review of the termination of her social security disability benefits by the Secretary. She later amended her complaint to pursue the case as a class action on behalf of similarly situated disabled persons within the Eighth Circuit. The amended complaint alleges: first, that the Secretary is not following Eighth Circuit law in that she is terminating disability benefits absent evidence demonstrating either that the claimant's condition has materially improved or that the original decision granting benefits was erroneous; and second, that the Secretary is not following Eighth Circuit law in that she is requiring that objective medical evidence fully corroborate a disability claimant's allegations of pain and other subjective complaints.

On April 27, 1984, the district court issued a preliminary injunction and a class certification order. It determined that the Secretary was nonacquiescing in Eighth Circuit decisions with respect to the proper standard for evaluating pain and other subjective complaints, and with respect to the proper standard for terminating disability benefits. The court enjoined the Secretary from denying or terminating disability ben-

efits unless she followed this Court's decisions regarding these standards. It also provided for reconsideration of the claims of persons within the class under the designated standards.

On May 1, 1984, the Secretary sought an emergency stay of the preliminary injunction pending appeal to our Court. The district court denied that motion the next day. The Secretary filed a notice of appeal on May 15, 1984. On May 25, 1984, this Court granted a temporary stay pending appeal. We heard oral argument on June 12, 1984.

In her brief and at oral argument, the Secretary asserted that she had been applying Eighth Circuit cases concerning the standard for evaluating allegations of pain and other subjective complaints. The appellants took a contrary view, but in light of the Secretary's assertion, we deferred a decision to give the parties a chance to reach an agreement on the issue.

On July 11, 1984, the Justice Department notified this Court that the parties reached a settlement, agreeing to the relevant standard for evaluating pain cases.

On July 17, 1984, this Court entered an order in which we stated that the settlement agreement set forth a correct statement of the law concerning pain cases, to be followed in all administrative and judicial proceedings within the Eighth Circuit. We required the Secretary to transmit the agreed-upon language to adjudicators within the Eighth Circuit responsible for determining disability, including personnel in state and district offices, and personnel within the Social Security Administration, administrative law judges (ALJs), and the Appeals Council. On July 18, the Secretary disseminated the approved language to all adjudicators.

Meanwhile, on June 27, 1984, this Court held in *Rush v. Secretary of Health and Human Services*, 738 F.2d 909 (8th Cir. 1984), that "in a disability-termination proceeding, there is a presumption that a claimant who has previously been determined to be disabled remains disabled." *Id.* at 915–16 (footnote omitted). We also held that the Secretary must bear the initial burden to come forward with evidence showing that there is a legitimate reason to re-evaluate the claimant's right to receive benefits. We explained that the Secretary could meet this burden

> by showing that there was clear and specific error in the prior determination or by producing new evidence that the claimant's medical condition has improved, that the claimant has benefited from medical or vocational therapy or technology, or that the claimant's condition is not so disabling as originally supposed.

*Id.* at 916.

On September 13, 1984, this Court entered an order directing the Secretary of Health and Human Services to inform the Clerk of the United States Court of Appeals for the Eighth Circuit on or before September 25, 1984, whether she intended to nonacquiesce in the Court's decision in *Rush*.

On September 19, 1984, Congress passed the Social Security Disability Benefits Reform Act of 1984 (1984 Act), Pub.L. No. 98–460, 98 Stat. 1794 (1984). The President signed the Act on October 9, 1984, and it became effective on that date. Among other things, the Act sets forth the standard for reviewing disability benefits terminations, and the standard for evaluating pain and other subjective complaints. It also establishes the procedures to be followed in pending and future cases relating to medical improvement and pain.

## II. TERMINATION CASES WHERE MEDICAL IMPROVEMENT IS ALLEGED.

The 1984 Act details the procedure to be followed concerning persons whose benefits have been terminated by the Secretary. It provides in pertinent part that the Secretary may terminate the benefits of persons who have previously been found disabled only if there is substantial evidence which demonstrates that:

(A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and

(B) * * * the individual is now able to engage in substantial gainful activity.[1]

*Id.* § 2(a).

This determination is to be made

on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled.

*Id.*

This language makes clear that the portion of our *Rush* decision that recognized a presumption of continuing disability and required the Secretary to bear the initial burden of producing evidence indicating a legitimate reason to reevaluate the claimant's disability no longer stands.

The Act provides that the court shall remand to the Secretary the cases of persons whose benefits have been terminated and who were unnamed members of a class action relating to medical improvement pending as of September 19, 1984. The Secretary is to notify these persons that they may request a review of their cases under the 1984 Act within 120 days of receiving this notice. The claimant may also request interim benefits pending the initial redetermination. The Secretary's decision as to each claimant is subject to further administrative and judicial review, if the claimant requests this review in a timely manner. *Id.* § 2(d)(3). The 1984 Act specifies that the decision by the Secretary is to be

regarded as a new decision on the individual's claim for benefits, which super-

sedes the final decision of the Secretary. The new decision shall be subject to further administrative review and to judicial review only in conformity with the time limits, exhaustion requirements, and other provisions of section 205 of the Social Security Act and regulations issued by the Secretary in conformity with such section.

*Id.* § 2(d)(4).

Finally, the 1984 Act limits class action litigation over the medical improvement standard by providing that:

No class in a class action relating to medical improvement may be certified after September 19, 1984, if the class action seeks judicial review of a decision terminating entitlement (or a period of disability) made by the Secretary * * * prior to September 19, 1984.

*Id.* § 2(d)(5).

In light of the action taken by Congress, there are only two questions remaining in this litigation concerning claimants who allege that their disability benefits have been erroneously terminated because of the improper application of the medical improvement standard: 1) should the pending class action be dismissed upon remand to the Secretary, and 2) if not, what portions of the district court's order should be implemented in light of the 1984 Act?

The Secretary maintains that, after an individual case or the case of an unnamed class member is remanded to the Secretary, there is no further role for any court, and the 1984 Act thus requires that the case be dismissed. The plaintiffs contend that the 1984 Act does not require dismissal of the case and that the district court should continue to supervise the case after remand to the Secretary.

■ The 1984 Act requires that all claims including those of named and un-

---

1. The 1984 Act also provides several other grounds for termination: (1) where the claimant has benefited from advances in medical or vocational therapy or technology; (2) where the claimant's impairment is shown to be not as disabling as originally determined, based on new or improved diagnostic techniques; or (3) where the prior determination of disability is shown to be in error. In each case there must also be substantial evidence that the individual is now able to engage in substantial gainful activity. Social Security Benefits Reform Act of 1984, Pub.L. No. 98–460, § 2(a), 98 Stat. 1794 (1984).

named class members be initially resolved by the Secretary. *Id.* § 2(d). The conference agreement states that the 1984 Act "provides that the existing certified classes will be covered by the new standard in order to resolve the existing controversy over the medical improvement issue in the courts." 130 Cong.Rec. H9828 (daily ed. Sept. 19, 1984). In accordance with this objective, we dismiss the class action concerning the medical improvement cases. We note, however, that the disability benefits of more than 400,000 persons were terminated by the Secretary. Many of those terminated have sought review of their individual claims in this and other Circuits. At least two class actions including the instant one have been commenced in this Circuit. It is now conceded that the benefits of many persons were improperly terminated. In light of this history, the Secretary has a responsibility to those who have sought the protection of this Court to insure that the claims of those who were terminated and who seek review and reinstatement of benefits are handled promptly and in accordance with the letter and the spirit of the 1984 Act.

The plaintiffs contend that, where the statute and the preliminary injunction conflict with respect to the nature and the timing of relief, the preliminary injunction should prevail. First, § 2(d)(2) of the 1984 Act provides that the claims of class members with individual appeals pending in court be automatically remanded. The district court allowed class members to choose either to remand to the Secretary, or have their cases adjudicated by the court with jurisdiction over their appeals. The plaintiffs argue that class members should, in the interest of judicial economy, be allowed the latter option. They also argue that, because many claimants have raised issues in addition to medical improvement (including the pain issue) which may be dispositive, we should permit the courts to resolve these cases without remand. They cite the delay in the administrative process as requiring this result. We recognize that there is merit to these contentions, but Congress has spoken and we cannot disre-

gard its mandate to remand these cases to the Secretary. Second, even though the statute provides that class members who are not pursuing administrative or judicial appeals must affirmatively request readjudication of their claims after receiving notice, the plaintiffs argue that these claims should be readjudicated automatically as provided by the preliminary injunction. Again, notwithstanding the plaintiffs' analysis of the relative burdens and benefits of automatic readjudication, this balancing decision has been conducted by Congress, and it must be respected.

At least two practical aspects of the district court's preliminary injunction remain which have not been addressed by Congress. Specifically, while the 1984 Act does provide that the Secretary must prescribe regulations implementing the Act within six months, the Act is silent as to the timing and the form of notice to be given to class members concerning their right to readjudication and reinstatement of benefits. The timetable for notifying class members was certainly a concern of the Congress. The conference report states that:

> The conferees recognize that there will be considerable administrative difficulty in identifying and notifying individuals who are eligible to have their cases redetermined as a result [of] their being unnamend [sic] members of class actions certified prior to September 19, 1984. Notwithstanding the administrative difficulty of this task, the conferees expect the Secretary of Health and Human Services to act expeditiously in notifying these individuals of the provisions of this act which are applicable to them.

130 Cong.Rec. H9828 (daily ed. Sept. 19, 1984).

In light of this conference report and in light of the fact that the Secretary will have to notify not only the class members of this class action, but persons similarly situated throughout the United States, we cannot mandate that the specific time periods in the district court's order be followed. Again, we emphasize, however, that signifi-

cant delays have already occurred and that the Secretary should act promptly.

The Secretary apparently does not object to the form or content of the notices. The Act leaves it to the Secretary to notify class members about their right to readjudication of their claims; while the notice provisions approved by the district court are not mandatory, the Secretary may wish to use them to the extent they are consistent with the Act.

## III. PAIN CASES.

The July 11, 1984, stipulation signed by the Secretary and the plaintiffs with respect to evaluation of pain read as follows:

A claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment. Symptoms such as pain, shortness of breath, weakness, or nervousness are the individual's own perceptions of the effects of a physical or mental impairment(s). Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms (especially pain) are difficult to prove, disprove, or quantify. *As a result of this difficulty, some adjudicators have misinterpreted the Secretary's policies as enunciated in SSR–82–58.* [Emphasis added.]

In particular, some adjudicators may have misinterpreted Example No. 2 in SSR–82–58 to allow allegations of pain to be disregarded solely because the allegations are not fully corroborated by objective medical findings typically associated with pain. The example should not be construed to be inconsistent with the text of SSR–82–58 which states in part:

The effects of symptoms must be considered in terms of any additional physical or mental restrictions they may impose beyond those clearly demonstrated by the objective physical manifestations of disorders. Symptoms can sometimes suggest a greater severity of impairment than is demonstrated by objective and medical findings alone.

While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.

The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

1. the claimant's daily activities;

2. the duration, frequency and intensity of the pain;

3. precipitating and aggravating factors;

4. dosage, effectiveness and side effects of medication;

5. functional restrictions.

The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. [Emphasis in original.]

*Polaski v. Heckler,* 739 F.2d 1320, 1321–22 (8th Cir.1984).

On July 17, 1984, this Court issued an order approving the language as a correct statement of the law under the Social Security Act and of the case law in the Eighth Circuit. On July 18, 1984, the Secretary disseminated the approved language to all adjudicators—state district offices, state DDS offices, and ALJs in the Eighth Circuit. It disseminated the same information to the Appeals Council.

Thereafter, this Court permitted the parties to ·file supplemental briefs to explain how the agreement on the pain standard, as approved by this Court, affected this litigation. The government's brief stated:

> The approved language is simply a clarification of SSR 82–58, which is the Secretary's instructional ruling on the evaluation of pain and other subjective complaints. This point is made clear by the specific reference in the approved language to SSR 82–58 *and the fact that errors in cases involving pain may have been the result of misinterpretations of the SSR and specifically Example No. 2 in the SSR.* * * * ("[S]ome adjudicators have misinterpreted the Secretary's policies enunciated in SSR–82–58"; and "some adjudicators may have misinterpreted Example No. 2 in SSR–82–58").
>
> That the approved language is a clarification of SSR 82–58 is further reinforced by the fact that the Secretary's regulations and SSR 82–58 require that pain and other subjective complaints be evaluated according to the following factors:
>
> 1.  the claimant's daily activities;
> 2.  the duration, frequency and intensity of the pain;
> 3.  precipitating and aggravating factors;
> 4.  dosage, effectiveness and side effects of medication;
> 5.  functional restrictions.
>
> See SSR 82–58, Addendum D to Opening Brief at 3. The approved language identifies the same factors and similarly requires their consideration in the evaluation of subjective complaints of pain. * * *
>
> In sum, the approved language is merely a restatement of the standard which the Secretary has been following all along. [Emphasis added, citations omitted.]

On September 19, 1984, Congress passed the Social Security Disability Benefits Reform Act of 1984.[2] That Act amended the existing law with respect to evaluation of pain. It provides:

EVALUATION OF PAIN

SEC. 3. (a)(1)[.] Section 223(d)(5) of the Social Security Act is amended by inserting after the first sentence the following new sentences: "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability."

(2) Section 1614(a)(3)(H) of such Act (as added by section 8 of this Act) is amended by striking out "section 221(h)" and inserting in lieu thereof "sections 221(h) and 223(d)(5)".

(3) The amendments made by paragraphs (1) and (2) shall apply to determinations made prior to January 1, 1981. *Id.* § 3(a).

The conference report summarized Congress's understanding of present law with respect to evaluation of pain as follows:

---

**2.** The existing statute stated only that: "An .individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5).

There is no statutory provision concerning the evaluation of pain (or the use of subjective allegations of pain) in determining eligibility for disability benefits. The definition of disability requires that the person be unable to work by reason of a "medically determinable impairment"—one which results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

By regulation, subjective allegations of symptoms of impairments, such as pain, cannot alone be evidence of disability. There must be .medical signs or other findings which show there is a medical condition that could be reasonably expected to produce those symptoms and that is severe enough to be disabling.

130 Cong.Rec. H9828–29 (daily ed. Sept. 19, 1984).

The conference report then stated:

· The statutory language providing for an interim standard for evaluation of pain is amended to more accurately reflect current policies.

*Id.* at H9829.

The Chairman of the Social Security Subcommittee, Congressman J.J. Pickle, commenting on the statutory provisions concerning pain, stated:

With reference to pain, the conference agreement puts present regulatory policy into statute until January 1, 1987, and mandates that in the meantime, a study be conducted so that we might better deal with this very difficult issue. I know that many Members in both bodies are concerned about the fairness of our present policies and I would expect that as we continue to benefit from the progress of medical science, we will improve our laws in this regard.

*Id.* at H9836.

No other House member commented on the statutory provision with respect to pain.

It seems clear from the conference report and the statement of Congressman Pickle, a House manager of the bill, that it was the intent of Congress to write the regulation dealing with pain into the statute. That this result was accomplished is evidenced by the fact that the amended statute closely tracks the regulations.

The question, then, is does the amended statute negate the settlement agreement approved by this Court. We conclude it does not. The Secretary's supplemental brief of August 1, 1984, quoted above, provides the rationale for this conclusion.

■ Our understanding is simply this: The amended statute on pain evaluation requires the Secretary and adjudicators to follow regulation § 404.1529 and ruling SSR 82–58 in evaluating pain until January 1, 1987. Adjudicators are to do so, however, in light of the settlement agreement which recognized that some adjudicators had misinterpreted SSR 82–58. It follows that all pain cases in the Eighth Circuit currently under evaluation at the administrative or judicial level will be evaluated on the basis of the amended statute, regulation § 404.1529, and ruling SSR 82–58 as clarified by the settlement agreement. Cases filed after this date will be evaluated on the same basis. As we stated in our opinion of July 17, 1984, the settlement agreement is "a correct statement of the law concerning evaluation of pain and other subjective complaints for determining disability." It would thus seem that any differences between the Secretary and this Circuit with respect to the law relating to the evaluation of pain have been resolved and that there is no longer a question of nonacquiescence on the part of the Secretary although questions as to the substantiality of evidence in pain cases will undoubtedly continue to arise in the future.

There remain a number of specific problems with which we now deal.

Some named and unnamed members of the *terminated* class claim that the pain standard has been incorrectly applied in their cases. In such instances, the claims must be remanded to the Secretary, who will review their cases in light of the 1984 Act and this opinion.

Other unnamed plaintiffs raising the pain issue (but not the issue of medical improvement) have cases pending before this Court or district courts within the Circuit. These cases should be decided in accordance with this opinion by the courts having jurisdiction of the cases. Cases may be remanded to the Secretary where substantial evidentiary questions remain.

▇▇▇▇ The class as certified also includes claimants whose disability claims were denied by the Secretary but who at the time of certification were still pursuing administrative appeals, or if not pursuing administrative appeals, were not time barred from doing so. As to these claims, the district court concluded that a waiver of the requirement of exhaustion was appropriate in this case. This is the most difficult issue in this appeal. The Secretary argues that the Court does not have jurisdiction over these cases and so must vacate this portion of the district court's preliminary injunction. The plaintiffs contend that the Court does have jurisdiction under the Social Security Act, 42 U.S.C. § 405(g) (1982), and the mandamus statute, 28 U.S.C. § 1361 (1982). We find that the Court does have jurisdiction over these claims and that this carefully defined section of the class is entitled to relief.

Section 405(g) provides that:

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides * * *.

This section involves several elements: (1) the individual must have presented a claim for benefits to the Secretary, and (2) the individual must have exhausted the administrative remedies established by the Secretary. The first requirement is "jurisdictional" in the sense that it may not be waived; the second requirement may be waived by either the Secretary or the courts. *Heckler v. Ringer,* —— U.S. ——, ——, 104 S.Ct. 2013, 2021, 80 L.Ed.2d 622 (1984); *Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976); *Mental Health Association of Minnesota v. Heckler,* 720 F.2d 965, 969 (8th Cir.1983). Each of the class members has submitted a claim for disability benefits to the Secretary; none, however, exhausted his or her administrative remedies. Thus, the question is whether the district court properly waived the exhaustion requirement for them.

As we noted in *Mental Health Association of Minnesota v. Heckler,* 720 F.2d at 969, "[t]he Supreme Court has taken a rather pragmatic approach" to this requirement. In *Mathews v. Eldridge,* 424 U.S. at 330, the Supreme Court acknowledged that, while the waiver determination generally belongs to the Secretary, "cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." It went on to determine that waiver was proper because the plaintiff's legal claim was entirely collateral to his substantive claim of entitlement, and he had "at least a colorable claim that * * * an erroneous termination would damage him in a way not recompensable through retroactive payments." *Id.* 424 U.S. at 331, 96 S.Ct. at 900 (footnote omitted). *See also Heckler v. Ringer,* —— U.S. at —— - ——, 104 S.Ct. at 2023.

The Second Circuit also recently suggested that analysis of whether waiver is appropriate requires a flexible, pragmatic approach:

Although *Eldridge* and *Ringer* make clear the circumstances that permit a court to waive exhaustion, they do not establish whether each of the individual factors deemed relevant in those decisions—futility, collaterality, and irreparable harm—must be present before a court may dispense with exhaustion. In the absence of express guidance, we have taken the view that no one factor is

critical. * * * We have adopted a more general approach, balancing the competing considerations to arrive at a just result under the circumstances presented. *City of New York v. Heckler*, 742 F.2d 729, 736 (2d Cir.1984) (citation omitted).

We determined in *Mental Health* that waiver of the exhaustion requirement was proper, based upon a pragmatic analysis of the claimants' interest in judicial review at that point in the proceedings and the relative harm to the agency's administrative process. *Mental Health Association of Minnesota v. Heckler*, 720 F.2d at 970–71. A similar pragmatic analysis leads us to conclude that waiver is appropriate in this case for several reasons. First, the district court found, and we agree, that the plaintiffs face potentially irreparable harm. In the district court's words,

> It is hard to envision a more urgent situation. Claimants who lose or are denied benefits face foreclosure proceedings on their homes, suffer utility cutoffs and find it difficult to purchase food. They go without medication and doctors' care; they lose their medical insurance. They become increasingly anxious, depressed, despairing—all of which aggravates their medical conditions.

*Polaski v. Heckler*, 585 F.Supp. 1004, 1013 (D.Minn.1984).

Secondly, deference to the Secretary's judgment concerning exhaustion is inappropriate in light of the plaintiffs' contention that administrative adjudicators at every level have evaluated complaints of pain using an improper standard. As noted above, the Secretary herself acknowledged that

> some adjudicators may have misinterpreted the Secretary's policies as enunciated in SSR–82–58.

> In particular, some adjudicators may have misinterpreted Example No. 2 in SSR–82–58 to allow allegations of pain to be disregarded solely because the allegations are not fully corroborated by objective medical findings typically associated with pain.

*Polaski v. Heckler*, 739 F.2d at 1322.

This Court has reversed the Secretary's denial of disability due to her failure to follow the proper pain standard on a number of occasions. In 1984 alone, we reversed or remanded to the Secretary because of inadequate consideration of pain in at least twelve cases, while affirming the Secretary's analysis of pain or other subjective complaints in none. *Douglas v. Schweiker*, 734 F.2d 399 (8th Cir.1984); *Carpenter v. Heckler*, 733 F.2d 591 (8th Cir.1984); *Reinhart v. Secretary of Health and Human Services*, 733 F.2d 571 (8th Cir.1984); *Ledoux v. Schweiker*, 732 F.2d 1385 (8th Cir.1984); *Nunn v. Heckler*, 732 F.2d 645 (8th Cir.1984); *Marshall v. Heckler*, 731 F.2d 555 (8th Cir.1984); *Brissette v. Heckler*, 730 F.2d 548 (8th Cir.1984); *Allred v. Heckler*, 729 F.2d 529 (8th Cir. 1984); *Smith v. Schweiker*, 728 F.2d 1158 (8th Cir.1984); *Layton v. Heckler*, 726 F.2d 440 (8th Cir.1984); *Basinger v. Heckler*, 725 F.2d 1166 (8th Cir.1984); *Tome v. Schweiker*, 724 F.2d 711 (8th Cir.1984); *Warner v. Heckler*, 722 F.2d 428 (8th Cir. 1983). As in *Mental Health*, the high reversal rate "fortifies our decision to waive exhaustion in light of the potentially irreparable harm incurred by the plaintiffs as a result of this procedural irregularity." *Mental Health Association of Minnesota v. Heckler*, 720 F.2d at 970.

Third, at the time this appeal was submitted, the Secretary argued strenuously that she was acquiescing in this Circuit's decisions concerning the pain standard, although she acknowledged that the standard may have been misapplied by some administrative adjudicators. In light of the Secretary's position, we deferred our disposition of this appeal in order to permit the Secretary and the plaintiffs to achieve a settlement agreement on the proper pain standard. We took this step also because it allowed the Secretary to pursue the national uniformity of administration which she contends is so important. As a result of the parties' settlement agreement, all class members whose claims have been decided since July 17, 1984, will have their claims re-decided under the proper pain standard. Those class members whose

claims were decided before this date have not received this relief. This result is not only unfair, but if permitted, would diminish the Court's authority to direct uniform and equitable relief in class actions.

Fourth, in light of the relief sought by the plaintiffs, deferring to the agency is both unnecessary and inappropriate. At this point in the proceedings no further elaboration of agency policy is likely. The parties' stipulation on pain and the 1984 Act have resolved the controversy over the appropriate standard. All that remains is to give these class members a chance to have their complaints of disabling pain evaluated under the correct standard.

Finally, the plaintiffs'· claims are admittedly not "wholly collateral" to their claims for benefits, as was true in *Eldridge*. But the focus of their relief as a class—the Secretary's compliance with our case law and the 1984 Act—is substantially collateral to the issue of whether they are in fact disabled and entitled to benefits. *See City of New York v. Heckler*, 742 F.2d at 736–37; *Mental Health Association of Minnesota v. Heckler*, 720 F.2d at 971.[3]

The district court narrowly tailored the class to meet the sixty-day requirement of section 405(g). Only those class members who received an adverse decision from the Secretary within sixty days prior to the filing of the relevant class actions are entitled to relief here.[4]

Accordingly, those class members who were denied disability benefits on medical or medical-vocational grounds before July 17, 1984 (the date of our order), alleging that they cannot work due to pain or other subjective complaints, and who, although not time barred, have not yet fully exhausted their administrative appeals are entitled to have their claims reconsidered by the Secretary under the proper pain standard. The Secretary shall, within a reasonable time, issue a written notice to these class members (with a copy to their legal representatives, if any) which:

1) Informs each member of the class of the proper pain standard;

2) Asks each member of the class whether he or she contends he or she is unable to work in whole or in part because of pain as defined in the standard;

3) States that each member of the class has a right, if he or she chooses, to have his or her claim reconsidered under the proper pain standard; and

4) Contains other information concerning the availability of attorneys under the Social Security Act to assist claimants in their efforts to gain benefits.

Upon receiving a written request for reconsideration within time limits established by the Secretary, the Secretary shall consider the application under the proper pain standard and shall issue a written decision within a reasonable time. No deadlines, and no interim benefits to class members whose. claims were not reconsidered by a deadline, are required of the Secretary. The district court shall thus retain jurisdiction over the pain cases in this manner.

## IV. CONCLUSION.

This case is remanded to the district court with directions to proceed in a manner consistent with this opinion.

JOHN R. GIBSON, Circuit Judge, concurring in part and dissenting in part.

While I agree with a substantial part of what the court holds today, I am unable to

---

**3.** In light of our conclusion that there is jurisdiction under section 405(g), it is unnecessary for us to consider whether the mandamus statute provides an alternate basis for jurisdiction.

**4.** The class members are those as described above who received an adverse decision within the following time periods:

1) in Minnesota, North Dakota, South Dakota, Nebraska, and Missouri, those persons who received an adverse decision on or after January 30, 1984, through July 16, 1984;

2) in Arkansas, those persons who received an adverse decision at the ALJ or Appeals Council levels on or after February 20, 1984, through July 16, 1984; and

3) in Iowa, those persons who received an adverse decision on or after November 26, 1983, through July 16, 1984.

*See Polaski v. Heckler*, 585 F.Supp. 1004, 1006–07 & n. 1 (D.Minn.1984).

agree that the district court properly waived the requirement of exhaustion of administrative remedies for those class members who alleged disabling pain but did not pursue timely appeals after denial of their claims. The court today considerably exceeds the limits of the waiver doctrine as set down in *Mental Health Association v. Heckler,* 720 F.2d 965 (8th Cir. 1983). Several factors present in *Mental Health* are not present in this case, the most notable being that the claimants in *Mental Health,* because of their condition, were often incapable of understanding or effectively using their appeal rights. *Id.* at 970. Given the extensive public discussion of the Social Security situation in this circuit from late November 1983 through July 16, 1984, I find it hard to believe that persons truly threatened with such irreparable harm as hypothesized by the court would not have sought administrative review of the denials of their benefits.

In addition, in *Mental Health* there was a finding by the district court that an improper presumption was being applied; thus, we held, additional agency proceedings would not result in further clarification of agency policy and immediate court review would not "interfere prematurely with agency procedures." *Id.* at 970–71. Here, while there have been many misapplications of the pain standard, the July 17, 1984, stipulation concerning the standard in such cases does not demonstrate the existence of an erroneous policy or procedure. *Polaski v. Heckler,* 739 F.2d 1320, 1321–22 (8th Cir.1984). There is less reason to believe that blanket court intervention is necessary and I would defer to normal agency procedures, including the Secretary's decisions on when waiver of exhaustion is appropriate.

The extension of *Mental Health* to the facts of this case is contrary to the principles laid down in *Mathews v. Eldridge,* 424 U.S. 319, 331 n. 11, 96 S.Ct. 893, 901 n. 11, 47 L.Ed.2d 18 (1976) (waiver of exhaustion requires the existence of a challenge entirely collateral to the substantive claim of entitlement plus a colorable claim of irreparable harm). Accordingly, I dissent from that portion of the opinion dealing with the waiver of exhaustion, commencing on page 15 of the court's opinion. I would not allow those seeking administrative review to continue in this litigation.