**Mary E. THOMPSON, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

No. 86–0494C(6).

United States District Court, E.D. Missouri.

April 2, 1987.

Samuel A. Goldblatt, Fox, Goldblatt & Singer, Inc., St. Louis, Mo., for plaintiff.

Thomas E. Dittmeier, U.S. Atty., Edwin B. Brzezinski, Asst. U.S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM

GUNN, District Judge.

This case is before the Court on the parties' cross-motions for summary judgment pursuant to Rule 56, Fed.R.Civ.Pro. The suit involves two applications by plaintiff Mary E. Thompson for benefits under the Social Security Act. On January 25, 1985 plaintiff filed an application for disability benefits under Title II of the Act, 42 U.S.C. § 401 *et seq.*, alleging disability commencing November 6, 1983. [Tr. 42–45] On April 23, 1985 plaintiff filed an application for supplemental security income benefits based on disability under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* The Secretary denied benefits initially and on reconsideration of plaintiff's Title II application. [Tr. 46–55, 56–66] Plaintiff's Title XVI application was also denied. Following a hearing, an Administrative Law Judge (ALJ) issued a decision unfavorable to plaintiff. On January 8, 1986 the Appeals Council of the Social Security Administration denied plaintiff's request for review. [Tr. 2–3] Therefore, the decision of the ALJ stands as a final decision of the Secretary. *See* 42 U.S.C. § 405(g).

The hearing before the ALJ was conducted on November 1, 1985. Plaintiff testified and was represented by an attorney. [Tr. 24] The transcript from the hearing reveals that plaintiff was born on November 12, 1934, is five feet ten inches tall and weighs 225 pounds. She graduated from high school. She is married and has six children and lives in Cadet, Missouri.

Plaintiff testified at the hearing that prior to the time she first claimed disability she had been employed as a barmaid and as a nurse's aide. On November 9, 1983 she hurt her back lifting a patient, and she has not worked since that time. She filed a claim for worker's compensation, but to date has not received benefits. [Tr. 29] The ALJ found that plaintiff could not return to her former employment as a nurse's aide or bartender. [Tr. 16]

Plaintiff testified that her doctor informed her at the time of her injury that she had a herniated disk in the L3, L4 and L5–S1 region of her back. She had back surgery performed at that time by Dr. Routsong. She first applied for Social Security benefits in 1984. Judge Samuelson denied her application after a hearing. Plaintiff testified at the hearing on her present application that she feels her condition has worsened since that time in that her pain has increased in severity and her ability to perform tasks is much more limited. She testified to back pain which radiates down her left leg. [Tr. 28] Her current treating physician has told her that she has rheumatoid arthritis and traumatic arthritis and has prescribed weekly injections for arthritis and muscle relaxers for her back. [Tr. 32]

With respect to her exertional limitations, plaintiff testified at the hearing that she can sit for only ten to fifteen minutes at a time without experiencing pain in her lower back and left leg. She can also stand in one place for only ten or fifteen minutes. [Tr. 31] She testified that the walk from her attorney's office to the ALJ's office—a distance of several blocks—was the farthest she had walked in over a year. She testified that on several occasions since her surgery her leg has given way beneath her.

With respect to her activities, plaintiff testified that she begins each day by soaking her hands in hot water to reduce their

swelling. Thereafter she either watches television, reads or naps. She testified that she can bake a cake "or something like that," but she otherwise does not perform any housework. Her husband does all the housework, the grocery shopping and the cooking. [Tr. 30] She testified that she is unable to go to church and rarely visits friends.

The record includes a medical report of her back surgery at Normandy Osteopathic Hospital. Her diagnosis, signed by Dr. Routsong, was left L5 adiculopathy secondary to extruded nucleus pulposis L5–S1, cicatrix, spondylosis, lumbosacral-somatic dysfunction. [Tr. 101] The report concluded that plaintiff was being discharged on March 24, 1984 in improved condition and that her prognosis was good. A report from the radiology department identified "(1) moderate thinning of the fourth and fifth lumbar invertebral disk spaces with mild degenerative arthritic change about the fourth lumbar invertebral disk space." [Tr. 108]

A July 13, 1984 letter from Dr. Routsong to Dr. Forsyth, plaintiff's then treating physician, indicated that plaintiff had demonstrated good improvement in neurological function and was with regard to that problem virtually asymptomatic. "She continue[d] to be symptomatic though in regard to her problem of sacroiliac joint disease with somatic dysfunction." Dr. Routsong had told plaintiff that the sacroiliac joint disease could not be cured but might be controlled with appropriate therapy. Dr. Routsong offered a somewhat guarded prognosis with regard to her joint problem but indicated that her neurologic prognosis remained good. [Tr. 115–116]

Dr. Shitut performed a consultative examination of plaintiff on August 16, 1984. He observed "markedly restricted" range of motion, noting that she could hardly get her hands to her knees when she attempted to bend over. Dr. Shitut also noted that x-rays of the lumbosacral region showed degenerative changes involving the lumbosacral disk. He concluded, "She has a significant problem with L5–S1 disk and radiculopathy of the S1 root in spite of surgical treatment." In his opinion, a combination of these two factors would preclude her from returning to her previous employment as a nurse's aide. [Tr. 124]

Plaintiff sought treatment from Dr. Joaquin Guzon in January 1985. She complained to Dr. Guzon of recurring back pain that could be temporarily relieved by analgesics. Dr. Guzon's opinion was that plaintiff was not in acute distress. He diagnosed arthritis and prescribed Rufen.

A second consultative examination was performed by Dr. Koreckij on April 4, 1985. He concluded that plaintiff exhibited increased sclerosis to the posterior facet joints at the L4–L5 level and the L5–S1 level. This condition is associated with mild narrowing at the L4–L5 disk space and some narrowing at the L5–S1 level. Dr. Koreckij found that plaintiff did not exhibit gross spondylolisthesis or calcification of the anterior or posterior longitudinal ligaments. Dr. Koreckij noted in conclusion that plaintiff had extensive subjective complaints of low back pain, but that the clinical findings appear to be out of proportion to the patient's subjective complaints." [Tr. 129]

The final medical evaluation in the record is an October 16, 1985 letter from plaintiff's present treating physician, Dr. George M. Gasser, to plaintiff's attorney in which Dr. Gasser diagnoses plaintiff's condition as rheumatoid and traumatic arthritis. Dr. Gasser identifies the symptoms of plaintiff's condition as "[p]ain and limitation of motion in lumbar spine and both hands and left shoulder." Dr. Gasser concludes with his evaluation that plaintiff is "unable to be employed at this time in this physical condition." [Tr. 134] Attached to the letter is an extensive but illegible list of medications taken by plaintiff. [Tr. 136] The record contains no indication of how long Dr. Gasser has treated plaintiff or of the basis of his prognosis.

The ALJ issued his decision on November 21, 1985. The ALJ found that plaintiff had "the residuals of hemi-laminectomy, foraminotomy and lysis of cicatrix at L5–S1 on March 19, 1984, arthrosis at L4–5 and L5–S1 and obesity." The ALJ concluded,

however, that plaintiff's physical impairments were not so severe as to be *per se* disabling under the Secretary's regulations. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ found that plaintiff is unable to perform her past relevant work as a nurse's aide and bartender. Upon entry of this finding the burden of proof shifted to the Secretary to demonstrate that plaintiff could perform substantial gainful activity. The ALJ found that plaintiff retained the residual functional capacity to perform light work. The ALJ then considered plaintiff's residual functional capacity for light work with her age, education, and past work experience, and concluded that plaintiff was not disabled under the Act.

The ALJ specifically found that plaintiff's complaints of severe back pain and arthritic stiffness were exaggerated and not credible. He based this finding on the evaluation of Dr. Koreckij, to whose opinion as an orthopedic surgeon he gave greater weight than to that of Dr. Gasser, a family practitioner. The ALJ also noted that plaintiff's testimony and conduct during the hearing appeared to be exaggerated.

The District Court is bound to take the Secretary's findings as conclusive if they are supported by "substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence" is relevant evidence a reasonable person might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Smith v. Schweiker*, 728 F.2d 1158, 1162 (8th Cir.1984). A claimant under Title II of the Act bears the initial burden of showing that she has a disabling impairment. *Johnson v. Califano*, 572 F.2d 186, 197 (8th Cir.1975); 42 U.S.C. § 423(d)(1). Once a plaintiff establishes that a disability precludes her from performing her former work the burden shifts to the Secretary to prove that there is some other type of substantial gainful employment that the claimant can perform. *Edwards v. Secretary of Health and Human Services*, 809 F.2d 506 (8th Cir.1987); *Tucker v. Heckler*, 776 F.2d 793 (8th Cir.1985).

In this case the ALJ properly recognized that once he had found that plaintiff could no longer perform her past relevant work the burden shifted to the Secretary to prove plaintiff's ability to perform some other type of substantial gainful activity. [Tr. 15] As part of this burden the Secretary must demonstrate that jobs exist for the claimant in the national economy. When the claim is based solely on exertional impairments, the secretary need not produce testimony to this effect but can rely on the "grid", 20 C.F.R. Part 404, Subpart P, Appendix 2, to satisfy the burden. *Edwards*, 809 F.2d at 507; *Tucker*, 776 F.2d at 795. When there is a combination of exertional disability along with allegations of disabling pain, however, and the "grid" indicates that the claimant is not entitled to a finding of disability based solely on the exertional impairments, the ALJ must consider the extent to which the claimant's ability to work is further diminished by her nonexertional impairments. *Edwards*, 809 F.2d at 508; *Tucker*, 776 F.2d at 795. Judge Muldoon concluded on the basis of the record as a whole that plaintiff retained the residual functional capacity to perform the full range of light work according to the Secretary's guidelines and that this capacity was not diminished by her claims of nonexertional disability. This Court concludes that the ALJ properly allocated the burden of proof and that his findings are supported by substantial evidence in the record as a whole. Accordingly, his denial of benefits is affirmed.

The ALJ considered plaintiff's subjective complaints of back pain, arthritic pain and arthritic stiffness pursuant to the standards set forth by the Eighth Circuit in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984). His determination that plaintiff's "subjective complaints are greatly exaggerated and that she lacks candor in admitting her activities and capabilities" [Tr. 14] was based on an evaluation of all the evidence of record. The ALJ did not disregard plaintiff's complaints "solely because the objective medical evidence [did] not fully support them" or "solely on the basis of personal observations." *Id.* at 948. Rath-

er, Judge Muldoon carefully reviewed the inconsistencies in the record as a whole.

Although plaintiff testified at her hearing that she has suffered constant severe back pain since November 1983, January 1985 office records of Dr. Guzon indicate she complained to him of intermittent pain only that was aggravated by cold and relieved by analgesics. Dr. Guzon noted that plaintiff was not in acute distress. Dr. Koreckij reported that plaintiff's complaints were non-specific and that plaintiff was unable to articulate what increased or relieved the intensity of pain. Judge Muldoon deemed plaintiff's testimony and actions at the hearing exaggerated.

Plaintiff protests on appeal of the ALJ's finding that he improperly granted greater weight to the medical opinion of Dr. Koreckij, a consulting physician, than to that of Dr. Gasser, her treating physician. Generally, "the report of a consulting physician who examined the claimant once does not constitute 'substantial evidence' upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician." *Lanning v. Heckler,* 777 F.2d 1316, 1318 (8th Cir.1985) (citing *Hancock v. Secretary of Department of Health, Education and Welfare,* 603 F.2d 739, 740 (8th Cir.1979). The Eighth Circuit requires the ALJ to give substantial weight to a treating physician's opinion, *Turpin v. Bowen,* 813 F.2d 165 slip op. No. 86–1852 (8th Cir.1987); *Lanning,* 777 F.2d at 1318. However, this opinion may be discounted if it is unsupported by the evidence, *Janka v. Secretary of Health, Education & Welfare,* 589 F.2d 365, 369 (8th Cir.1978), or is merely conclusional. *Ward v. Heckler,* 786 F.2d 844, 846 (8th Cir.1986) (per curiam).

The ALJ in this case discounted Dr. Gasser's evaluation both because it was conclusional, consisting of a letter of plaintiff's attorney without supporting examination or testing records that would reveal a basis for his opinion, and because it was inconsistent with that of another treating physician, Dr. Guzon. This Court concludes the ALJ did not err in giving greater weight to the comprehensive clinical report of Dr. Koreckij, an orthopedic specialist.

The ALJ's use of the guidelines was appropriate because he determined that plaintiff's alleged non-exertional impairment was not so severe as to preclude the performance of light work. *Cf. Smith v. Heckler,* 760 F.2d 184, 186–87 (8th Cir. 1985). In such a case the Secretary need not call a vocational expert to meet his burden of showing that jobs exist in the national economy that plaintiff can perform. *See Millbrook v. Heckler,* 780 F.2d 1371, 1373 (8th Cir.1985); *Tucker v. Schweiker,* 689 F.2d 777 (8th Cir.1982); *McCoy v. Schweiker,* 683 F.2d 1138, 1148 (8th Cir.1982).

Based upon a review of the record as a whole, this Court concludes that the Secretary's decision denying disability benefits is supported by substantial evidence. Accordingly, his decision is affirmed.

### ORDER

Pursuant to the memorandum filed herein on this date,

IT IS HEREBY ORDERED that the motion of defendant Otis R. Bowen, M.D. for summary judgment be and it is granted. The motion of plaintiff Mary E. Thompson for summary judgment is accordingly dismissed as moot.