**Earnest L. WILLIAMS, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 86–1081.**

United States District Court,
W.D. Arkansas,
El Dorado Division.

April 22, 1987.

Mary Thomason, El Dorado, Ark., for plaintiff.

Larry McCord, Fort Smith, Ark., for defendant.

## OPINION

ARNOLD, Circuit Judge, Sitting by Designation.

Earnest L. Williams brings suit pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of the Secretary of Health and Human Services (the Secretary) denying his claims for a period of disability and disability-insurance benefits under 42 U.S.C. §§ 416(i) and 423, respectively, and for supplemental-security-income benefits under 42 U.S.C. § 1381a. The Secretary has moved for summary judgment. Because the Secretary's decision is supported by substantial evidence on the record as a whole, summary judgment will be granted.

## I.

Williams was born on August 5, 1939, and is presently 47 years old. He has a high-school education, and has past relevant work experience as a logging-tractor driver and as a "kettle operator" in the asphalt roofing industry. However, he is not presently engaged in any substantial gainful activity. Williams applied for disability benefits on February 28, 1985, alleging that he had been disabled since December 20, 1984, by bronchial asthma and the residual effects of a 1967 stroke.

Williams's application was denied initially and upon reconsideration. On October 17, 1985, he was afforded a *de novo* hearing before an administrative law judge (ALJ).[1] Williams was represented by an attorney at the hearing. Williams and a friend, Alonzo Johnson, testified. The ALJ also received several medical reports concerning Williams. The record was reopened on February 12, 1986, when the ALJ admitted an additional medical report concerning an operation performed on Williams in December 1985.

The ALJ issued a decision on March 11, 1986, concluding that Williams was not disabled and was consequently ineligible for the benefits requested. The ALJ found that Williams suffers from bronchial asthma and that he suffered a gunshot wound in July 1985 that necessitated several operations, including that performed in December 1985. However, the ALJ further found that Williams nonetheless had no impairment or combination of impairments listed in or medically equal to one listed in 20 C.F.R. Part 404, Subpt. P, App. 1. The ALJ concluded that Williams retains the residual functional capacity to perform his past relevant work as a logging-tractor driver, which falls into the category of light work activity.

In May 1986, the Appeals Council of the SSA refused to review the ALJ's decision, rendering it the final decision of the Secretary.

Williams filed this action on June 26, 1986. His complaint alleges simply that he is entitled to, but was denied, the benefits he applied for. Complaint ¶¶ 2 and 3. The Secretary moved for summary judgment on October 28, 1986, but Williams has not responded. Since the time for response is long past, see Rule 20(b) of the Rules of the District Courts for the Eastern and Western Districts of Arkansas, this Court will proceed to rule on the motion.

## II.

The Secretary's decision must be affirmed if it is supported by substantial evidence on the record as a whole. This standard of review requires "more than a mere search of the record for evidence supporting the Secretary's findings." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir.1987), citing *Parsons v. Heckler*, 739 F.2d 1334, 1339 (8th Cir.1984). Instead, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). The record here contains evidence about three different medical problems cited by

---

1. The Hon. John F. Gautney.

Williams: bronchial asthma, problems associated with a 1967 stroke, and problems associated with his gunshot wound. The evidence and the ALJ's findings and conclusions about each of these will be discussed in turn.

### A.

Williams testified that he first began having asthma difficulties in the early 1960s, but that his condition has worsened in recent years. R. 42. As the ALJ noted, R. 9, the medical evidence in the record is sparse. The earliest such evidence concerning Williams's asthma is an August 22, 1982 University of Arkansas for Medical Sciences report which states that Williams was given emergency treatment for complaints of an asthmatic crisis. The report states that Williams reported use of Primatine Mist two to three times a day for his asthma, obtaining good relief from it, but had run out of this medicine that day. Williams also stated that he smoked one-half a pack of cigarettes a day. The physician who treated Williams observed scattered inspiratory and expiratory wheezes, but no crackles in Williams's breathing. His diagnosis was that Williams was suffering an acute asthma attack with mild distress. Williams was treated with spray from an albuterol inhaler; this produced excellent relief in 15 minutes. Williams was instructed to use an albuterol inhaler as needed, and to follow up with his physician.

The next report in the record, which is from approximately two-and-a-half years after the first report, is of a March 12, 1985 examination of Williams by Dr. Terry Burns. R. 128–31. Burns found Williams's throat and neck to be normal. In examining Williams's lungs, he noted "large airway sounds," but no wheezing. R. 129. Burns diagnosed Williams as suffering from mild chronic asthma, and prescribed use of a Ventolin-brand albuterol inhaler. R. 131. Burns noted in his report that this was the only occasion upon which he treated Williams. R. 128, 131.

The final report discussing Williams's asthma is that of Dr. Don Howard, who performed a general physical examination on Williams on April 17, 1985 at SSA's request. R. 136–43. As background to his exam, Howard noted Williams's history of asthma, his use of albuterol and Primatine, Williams's contentions about the limiting effects of his condition, and Williams's report that he smoked one pack of cigarettes daily. Howard found Williams well-developed and well-nourished. His height was 68 inches and his weight was 133 pounds. Williams had a normal respiratory rate of 20 times per minute. Through auscultation, that is, listening with a stethoscope or with the ear placed against the patient's body, Howard heard occasional rales and rhonchi; rales are crackling or bubbling sounds, and rhonchi are sounds with a musical pitch. Howard also noted bilateral inspiratory and expiratory wheezes, which are squeaking or puffing sounds heard in front of the patient's mouth. A chest X-ray showed hyperlucency of the left lung and increased bronchial markings of the right lung. Howard performed two pulmonary- or ventilatory-function studies. In the first he measured the volume of a one-second long forced expiration by Williams; this measurement is denominated an $FEV_1$. In the second, Howard measured the volume per minute of Williams's maximum voluntary ventilation (MVV). Williams's $FEV_1$ was 1.88 liters BTPS (volume expressed as if at standard body temperature, water saturation, and barometric pressure), and his MVV was 46 liters per minute. Howard's diagnosis was that Williams had severe bronchial asthma, moderately controlled.

■ The remaining evidence concerning Williams's asthma is in Williams's testimony and that of his friend, Alonzo Johnson. Williams testified that his long-standing asthma condition had gotten worse in recent years and that it seemed to him that it was continuing to worsen. R. 40–42. He testified that he now has asthma attacks daily, and that they often keep him up all night. R. 35–36, 41. While he acknowledged that his medication helped, R. 31, he said that at times it brought relief for only a few minutes. R. 36, 41. Williams testi-

fied that he was unable to walk more than a short distance without becoming short of breath and having to sit down. Williams stated that he was given shots for his attacks when he went to see the doctor, and that on the Monday preceding the hearing a doctor had given him three shots to bring him out of an attack. R. 40. Later, in response to the ALJ's question, he testified that he had also gone to hospital emergency rooms with attacks and received shots as treatment; he stated that he had gone to a clinic in Hampton, Arkansas, but that it had closed, and that he now had to go to Warner Brown Hospital in El Dorado, Arkansas. R. 44. Williams concluded that he lacked the capacity to return to his past employment. R. 34–35. Johnson, in his brief testimony, R. 46–49, corroborated Williams's testimony about his asthma attacks and the limiting effects of his condition; he also testified that he had taken Johnson to the hospital for shots on several occasions. R. 46.

Social-security regulations establish two ways in which chronic bronchial asthma such as Williams's could qualify as a listed disabling impairment. See 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 3.03, 3.02 A. First, Williams might have shown that *both* of his pulmonary-function test measurements are equal to or below values specified in § 3.02 A, which, for a person Williams's height (68 inches), are an $FEV_1$ of 1.4 and an MVV of 56. Williams did not meet this standard, for although his MVV of 46 was low enough, his $FEV_1$ of 1.88 was well above the specified value.

Second, Williams could qualify by showing that he had suffered "[e]pisodes of severe attacks ... in spite of prescribed treatment, occurring at least once every 2 months or on an average of at least 6 times a year, and prolonged expiration with wheezing or rhonchi on physical examination between attacks." § 3.03 B. A "severe attack" is a "prolonged episode[ ] lasting at least several hours, requiring intensive treatment such as intravenous drug administration or inhalation therapy in a hospital or emergency room." § 3.00 C. The record contains documentation of only one such incident, the report of his treatment at the University of Arkansas Medical Center in August 1982. Williams did testify, with corroboration from Johnson, that there were other occasions when he received such treatment. But Williams's testimony does not establish how often this has occurred; although the ALJ asked him directly how frequently he required such treatment, Williams responded simply by speaking of one recent occurrence. R. 40. The ALJ ultimately found Williams's testimony not credible. R. 10. In light of Williams's failure to document the hospital visits he claims to have made, and after a review of Williams's entire testimony, the Court cannot say that the ALJ drew an impermissible conclusion, see *Smith v. Heckler*, 760 F.2d 184, 187 (8th Cir.1985), or that his finding that Williams's asthma is not a listed disabling impairment under this second prong of § 3.03 is not supported by substantial evidence.

Williams's asthma would also require that he be found disabled if it is medically equal to a listed impairment. 20 C.F.R. § 404.1526. The ALJ might have found this to be the case because of Williams's testimony about his breathing difficulties, about the pain and discomfort associated with his condition, and about the effects of his condition upon his ability to engage in substantial gainful employment. However, the ALJ found these allegations not credible, R. 10; noting the minimal medical treatment Williams has received, the lack of medical indication of disabling pain and discomfort, and the minimal medication the various physicians found proper for treatment of Williams's condition, the ALJ concluded that Williams was not disabled on this basis. While the ALJ may not discount complaints like Williams's solely because they are not supported by the medical evidence, absence of such support is legitimately considered in evaluating the claimant's credibility. *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir.1984), *vacated on other grounds and remanded for reconsideration*, —— U.S. ——, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986), *reaffirmed*, 804 F.2d 456 (1986). This Court concludes that the ALJ, in finding Williams's allegations not

credible, properly gave them full consideration in the context of the remaining evidence before him. See *Ward v. Heckler*, 786 F.2d 844, 847–48 (8th Cir.1986). The medical evidence cited by the ALJ provides ample support for his conclusion that Williams was not disabled on account of his asthma.

### B.

■ The only evidence supporting Williams's claims that he had a stroke in 1967 and that he presently suffers residual effects of that event is Williams's own testimony. Williams, in the disability report he filed as part of his application for benefits, stated that he had suffered the stroke on a Friday in 1967, and returned to work on the following Monday. R. 80. At the hearing, Williams testified that he has headaches and leg pains that he attributes to this source. R. 31–33. Williams introduced no medical evidence of the stroke itself and his treatment for it in 1967, of any treatment for stroke-related problems since 1967, or of the present physical conditions he attributes to the stroke. On the other hand, Dr. Howard, in his general physical examination of Williams, found nothing that would support Williams's stroke-related claims; Howard noted, *inter alia*, that Williams had a full range of motion in the various parts of his spine and in his extremities, that his reflexes were normal, that his cranial nerves were intact, that no muscle weakness, muscle atrophy, or sensory abnormalities were noted, and that the various aspects of his coordination were good or, at worst, fair. R. 139–42. The ALJ addressed Williams's complaints of pain and discomfort due to the stroke together with his complaints concerning the effects of his asthma, and, as noted above, found his complaints not credible. Again this Court is unable to say that the ALJ's credibility finding was unwarranted, or that his conclusion that Williams is not disabled on this basis from performing the light work involved in his past relevant employment is not supported by substantial evidence.

### C.

The evidence concerning Williams's gunshot wound shows that he was shot in the abdomen with a pistol in July 1985. R. 32. Over the months between the wound's infliction and the October hearing before the ALJ, this injury required three operations: a colostomy, a colostomy closure, and an operation to drain a number of abcesses. R. 9–10, 153, 155. As a result of this problem, Williams had lost considerable weight by the time of the hearing; while he had weighed 133 pounds when examined by Howard in April, R. 138, at the hearing Williams testified that his weight was 105 pounds. R. 29. In December 1985, Williams was admitted to Union Medical Center for treatment of a further gunshot-wound-related problem, partial obstruction of his small bowel. R. 152–65. After non-surgical treatment failed, on December 10, 1985, Williams underwent an exploratory abdominal operation; the surgeons performed a resection of Williams's small bowel, removing a gangrenous portion of it, dissolved fibrinous adhesions attached to the bowel, and drained a number of intra-abdominal abcesses. R. 153. After the operation, Williams was kept in Intensive Care for several days, and given high doses of antibiotics. *Id.* He was then transferred out of Intensive Care, and the remainder of his hospitalization was, apart from several periods of medication-related disorientation, without complication. *Id.* He was discharged on December 20, 1985, at which point his drains had been removed, his wound had healed well, and he was on a regular diet. R. 152, 153. Williams was given a regular discharge, with the proviso that he was not to engage in strenuous activity. R. 152, 153.

■ Considering this evidence, the ALJ concluded that Williams had been disabled by the gunshot wound and related difficulties for a short period of time, but not for the 12 continuous months necessary to render him disabled for social-security purposes under 42 U.S.C. § 423(d)(1)(A). R. 10, 11. This conclusion, too, is supported by substantial evidence. Williams was recuperating normally when released from

the hospital in December 1985, and, though he was advised not to do strenuous work, this would not disable him from engaging in the light work associated with his past jobs as a tractor driver or as a kettle operator. Further, there is nothing in the record to indicate that Williams will continue to suffer the gunshot-wound-related difficulties that troubled him before his December 1985 operation. While, as noted above, the ALJ reopened the record in February 1986 at Williams's request to admit the medical reports of the December operation, Williams has not attempted to introduce any evidence of post-operative difficulties.

### III.

In sum, this Court concludes that there was substantial evidence to support the ALJ's conclusion that Williams is not disabled on account of his asthma, of the pain and discomfort he attributes to a 1967 stroke, of the medical problems stemming from his July 1985 gunshot wound, or of these conditions considered together. Defendant's motion for summary judgment is therefore granted, and judgment is being entered dismissing the complaint.