Nancy **ANDERSON**, Appellant,

v.

Margaret **HECKLER**, Secretary Health & Human Services, Appellee.

No. 85–2310.

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1986.

Decided Nov. 18, 1986.

---

H. Mayo Smith, Little Rock, Ark., for appellant.

Karen J. Behner, Dallas, Tex., for appellee.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Nancy Anderson appeals from a final judgment entered in the United States District Court for the Eastern District of Arkansas affirming a decision of the Secretary of Health & Human Services (Secretary) denying her application for social security disability benefits. For reversal appellant argues that (1) the Administrative Law Judge (ALJ) failed to apply the cessa-

tion of benefits standards to this case, (2) the ALJ failed to consider the combined effect of her separate impairments, and (3) the Secretary's decision is not supported by substantial evidence on the record as a whole. For the reasons discussed below, we reverse and remand.

Appellant was born in 1938 and was forty-four years old at the time of her application in December 1982. She completed the tenth grade and is able to read. Prior to appellant's disability in 1978, she had worked for three years as a waitress-cashier and also as a grocery checker.

Appellant filed her first application for disability benefits in May 1980; she claimed to be disabled as a result of severe arthritis in her shoulders, back and legs and because of arthritic pain, which restricted her mobility. In 1981 the Secretary awarded appellant a period of disability beginning on May 30, 1978, as a result of "diverse impairments which in combination, [are] characterized by continuing pain" that prevented appellant from engaging in substantial gainful activities. The medical reports relied on by the Secretary revealed that in 1978 appellant sustained a work-related back injury that resulted in disc surgery in 1979 and 1980. In addition appellant was diagnosed in 1981 as having chronic obstructive lung disease and anxiety depression.

In July 1982 the Secretary informed appellant that "based on objective medical evidence" her disability had ceased as of April 1982 and thus her disability benefits would be terminated. In support of the termination decision, the Secretary relied on records of a January 1982 hospitalization, a March 1982 examination by Dr. Charles Yohe, and a March 1982 pulmonary function study. In January 1982 appellant was hospitalized with complaints of memory loss, numbness, pain in the left side of her face, and decreased vision in the left eye. The discharge diagnosis was a cerebrovascular accident of the right temporal region (CVA). In March 1982 at the Secretary's request, Dr. Yohe performed a neuropsychiatric examination. Dr. Yohe diagnosed appellant as having a hysterical personality and doubted whether she had had a CVA. The March 1982 pulmonary function study revealed that appellant had a mild to moderate degree of obstructive lung disease.

Appellant did not seek a review of the Secretary's decision to terminate her benefits within the required sixty days, nor did she request an extension of time to request such a hearing. See 20 C.F.R. § 404.-933(b)(1), (c). Instead, in December 1982 appellant filed a new application for benefits. In this application appellant, as she did in the 1980 application, claimed that she was disabled as a result of arthritis which had its onset in May 1978. Appellant also complained of chronic obstructive pulmonary disease and a nervous condition.

Appellant's 1982 application was denied initially and on reconsideration. Pursuant to appellant's request she was granted a hearing before an ALJ in December 1983, wherein she was represented by counsel and accompanied by her husband. She testified to back pain, dizziness, staggering, headaches, and emotional and respiratory problems. In support of her application, appellant submitted a number of medical reports, including hospitalization reports and reports from Dr. James O'Pennington, her treating physician, Dr. Steve Metzer, a neurologist at the University of Arkansas, and Dr. B.E. Holmes of Lonoke, Arkansas.

The 1982 hospitalization reports indicated that appellant was hospitalized from September 13 through September 16, 1982, for complaints of coughing, smothering, weakness, and headaches. The diagnosis on admission was bronchitis, upper respiratory infection, possible pneumonia, and vascular headaches. Appellant responded poorly to treatment and was referred to a pulmonary disease specialist. Appellant was again hospitalized approximately a week later on September 21, 1982, and remained hospitalized through September 30, 1982. She was diagnosed as having pneumonia and chronic bronchitis, which was successfully treated with antibiotics and bronchial hygiene measures. Dr. O'Pennington, appellant's

treating physician, in reports dated February 1983 and March 1983 stated that he did not believe that appellant would ever be able to participate in a gainful occupation due to severe chronic degenerative disc disease, generalized arthritis and chronic obstructive lung disease. Dr. Holmes expressed a similar opinion in a letter dated February 19, 1983. Dr. Metzer examined appellant at Dr. O'Pennington's request on March 15, 1983. The neurological examination revealed minimal unsteadiness of appellant's gait and an absent ankle jerk on the right side, probably secondary to remote back surgery.

The ALJ considered these reports and the report of Dr. Paul Zelnick, who examined appellant in June of 1983 at the request of the Secretary. Dr. Zelnick diagnosed appellant as having "orthostatic hypotension [low blood pressure on standing] of a rather striking degree." Dr. Zelnick believed that this condition "would easily explain [appellant's] staggering gait by history as well as her near syncopal episodes routinely present with standing." Dr. Zelnick did not know whether the low blood pressure was worsened by appellant's antidepressant medication. He also believed that appellant had chronic obstructive lung disease and had back pain resulting from her prior surgeries. Dr. Zelnick further believed that appellant tended to overemphasize her complaints, but noted that "there are some objective findings such as the orthostatic drop in pressure which would go some distance in explaining some of her orthostatic symptoms."

The ALJ denied benefits, finding that appellant failed to produce "any evidence or documentation" that would establish the presence of a severe impairment after April 1982. The ALJ placed great reliance on Dr. Yohe's report in finding that appellant did not have a severe mental or psychological impairment. The ALJ also relied on Dr. Yohe's report in finding that there was no objective evidence to demonstrate that appellant had a CVA or "any significant residuals associated therewith." The ALJ found that appellant's subjective complaints of pain lacked credibility "when viewed in the light of the preponderance of the medical evidence" and also noted that appellant's demeanor at the hearing did not reflect favorably on her credibility.

The decision of the ALJ was affirmed by the Appeals Council on March 21, 1984. Appellant subsequently filed an action in the federal district court seeking review of this decision. The district court affirmed the decision of the Secretary denying appellant's application for disability benefits. This appeal followed.

Initially we must determine which decision of the Secretary is before this court on appeal: the April 1982 decision to terminate appellant's benefits or the 1983 decision denying the 1982 application for benefits. Appellant argues that the termination decision was before the district court and is before this court on appeal. Appellant contends that the ALJ treated her December 1982 application as a request to reopen the termination decision. See 20 C.F.R. § 404.-987(a), 988. Appellant relies on a statement of the ALJ that appellant's "present claim is really ... a claim that her disability did not cease in April 1982 as previously determined, but rather has been continuous at all times from May 30, 1978, through the present period."

The Secretary argues that although the ALJ could have construed appellant's 1982 application as a request to reopen the termination decision, the ALJ did not do so. At oral argument the Secretary conceded that the ALJ failed to make an express finding that he was not reopening the termination decision and that it was the better practice to do so. Nonetheless, the Secretary argues that the ALJ's statement in his opinion that appellant's claim concerned a continuation of her benefits was not a reopening of the decision but only a clarification of the relevant time period covered by the application for benefits. The Secretary further asserts that the ALJ's opinion read as a whole makes clear that the ALJ did not reopen the termination decision and, therefore, the termination decision is not before this court.

In *Califano v. Sanders*, 430 U.S. 99, 107–08, 97 S.Ct. 980, 985–86, 51 L.Ed.2d 192 (1977), the Supreme Court held that the statute granting authority to federal courts to review final decisions of the Secretary "cannot be read to authorize judicial review of alleged abuses of agency discretion in refusing to reopen claims for social security benefits." This court has indicated, however, that when a claim is "reconsidered on the merits ... it is properly treated as having been reopened as a matter of administrative discretion. Consequently, the final decision of the Secretary denying such a claim is also subject to judicial review to the extent it has been reopened." *Rohrich v. Bowen*, 796 F.2d 1030, 1031 (8th Cir.1986), *citing Jelinek v. Heckler*, 764 F.2d 507, 508 (8th Cir.1985) (*Jelinek*). In *Jelinek* this court concluded that the termination decision was reviewable because the ALJ considered the termination decision on the merits after initially concluding that the earlier termination decision would not be reopened.[1] In *Rohrich v. Bowen* this court held, however, that the ALJ's review of the applicant's medical history did not amount to a consideration on the merits or a *de facto* reopening of the earlier application where these matters were "simply preliminary facts required to assess rationally the question at issue, i.e., whether [applicant] was disabled at the time of the second application." 796 F.2d at 1031.

■ Consideration of the ALJ's statement in the present case against the background of the cases discussed above convinces us that the ALJ did not reopen the termination decision. We agree with the Secretary that the ALJ's statement concerning the period of disability sought in the 1982 application is not sufficient, standing alone, to indicate that the ALJ reopened the termination decision. Thus, we conclude that the termination decision is not before this court on appeal.

Appellant initially questions the validity of the second step of the sequential evaluation process set forth in 20 C.F.R. § 404.-1520, which the ALJ applied in assessing her disability claim. This second step, referred to as the "nonsevere impairment test" or severity step, requires a determination of the existence of a severe impairment on the basis of medical evidence alone. Neither the appellant's age, education or work experience is considered in making this determination. We do not decide whether the severity step violates the Social Security Act. This issue is currently before the Supreme Court for decision in *Yuckert v. Heckler*, 774 F.2d 1365 (9th Cir.1985), *cert. granted*, — U.S. —, 106 S.Ct. 1967, 90 L.Ed.2d 652 (1986). A panel of this court also considered this issue in *Brown v. Heckler*, 786 F.2d 870 (8th Cir. 1986). This court subsequently granted a rehearing en banc on August 12, 1986, but stayed any further proceedings pending the decision of the Supreme Court in *Yuckert v. Heckler*.

■ Appellant next argues that the ALJ failed to consider the combined effects of her impairments. The Secretary is required by the 1984 amendments to the Social Security Act to determine whether the combined effect of a claimant's impairments render him or her disabled. 42 U.S.C. § 423(d)(2)(C) (Supp.1984). The ALJ in the present case considered each of appellant's impairments separately and made a determination that the impairment did not constitute a severe impairment. The only indication that the ALJ considered the combined effect of the impairments is reflected in the following statement: "It must be found that the claimant has failed to provide any evidence or documentation that would establish the presence of any condition or combination of conditions ... which could be said to constitute a severe impairment...." We do not believe that this statement standing alone indicates that the ALJ has complied with the statutory

---

1. A similar result was reached by the Third Circuit in *Rankin v. Heckler*, 761 F.2d 936, 941 (3d Cir.1985). The ALJ noted that the applicant did not timely appeal the termination decision, but nonetheless, after review of the record, determined that the disability cessation decision was correct.

requirement that he consider the combined effect of a claimant's impairments. On remand the ALJ should fully consider whether the combined effect of appellant's separate impairments considered together constitute a severe impairment.

 On remand the ALJ should also give careful consideration to appellant's subjective complaints of pain and a nervous disorder. An ALJ may not disregard subjective complaints solely because they are not supported by objective medical evidence. *Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986), citing *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir.1984). The absence of objective medical evidence supporting the claimant's subjective complaints is only one factor to consider. *Conley v. Bowen*, 781 F.2d at 146. Subjective complaints may be discounted, however, if there are inconsistencies in the record as a whole, but not discounted solely on the basis of the ALJ's personal observation of the claimant. Although the ALJ referred to Dr. Zelnick's belief that appellant tended to overemphasize her complaints, the ALJ cites no evidence of appellant's daily activities, prior employment or symptoms that is inconsistent with the existence of pain. *Id.*

Finally, we direct the Secretary's attention to the fact that appellant has alleged both exertional and nonexertional impairments. This court has consistently held that the guidelines or grid may not be used if a claimant has a nonexertional impairment such as pain. *Jelinek*, 764 F.2d at 511. On remand the ALJ should call a vocational expert if it is determined that appellant's combined impairments prevent her from performing past relevant work. *McCoy v. Schweiker*, 683 F.2d 1138, 1148 (8th Cir.1982) (banc) ("If a claimant has a nonexertional impairment, the Guidelines and grid are not controlling and cannot be used to direct a conclusion of ... not disabled without regard to other evidence, such as vocational testimony").

Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.