Clara LYNN, Plaintiff,

v.

Otis R. BOWEN, Secretary of Health &
Human Services, Defendant.

No. 85–1507–CV–W–3.

United States District Court,
W.D. Missouri, W.D.

July 19, 1988.

On Application For Fees Aug. 23, 1988.

Larry O. Denny, Kansas City, Mo., for plaintiff.

Vernon A. Poschel, Asst. U.S. Atty., Paul P. Caccioppo, Chief Counsel, Region VII, Dept. of Health and Human Services, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

ELMO B. HUNTER, Senior District Judge.

This is a proceeding under Title II of the Social Security Act, as amended ("Act"), 42 U.S.C. § 401 *et seq.*, for review of a final decision of the Secretary of Health and

Human Services ("Secretary") denying plaintiff's application for disability insurance benefits. Section 205(g) of the Act provides for judicial review of a final decision of the Secretary. The matter currently pends on the parties' cross motions for summary judgment. For the reasons expressed below, the Secretary's decision will be reversed and remanded with directions to award benefits.

Plaintiff is a widowed female, born October 29, 1929, height 5 foot 1 inch, weight approximately 180 pounds. She currently lives with her 23 year old daughter. Plaintiff completed one year of high school and is literate but has received no special training beyond that level. Plaintiff was last employed in 1969 as an assembler at an ammunition plant. Plaintiff claims disability on a variety of complaints, the most serious of which are disabling chest pains upon exertion. Associated with the chest pains, plaintiff complains of fatigue and shortness of breath. Plaintiff also suffers from an ulcer and complains of pain from a hiatual hernia which was surgically repaired in 1972. Plaintiff originally applied for disability benefits in July of 1974. That application was granted and plaintiff was adjudged disabled as of October 9, 1969. In June of 1983 the Secretary decided to terminate plaintiff's benefits. Plaintiff filed for a reconsideration but did not apply for a hearing or otherwise contest the determination and decision. In August of 1984, plaintiff reapplied for benefits. Her application was considered and reconsidered and denied. In May of 1985 plaintiff had a hearing before an ALJ. In August of 1985 the ALJ issued a decision finding the plaintiff not disabled. That decision was affirmed by the Appeals Council in November of 1985. Plaintiff then brought suit in this Court seeking review of the Secretary's decision.

The plaintiff's medical history is evidenced by the records of Dr. Bowles and Dr. Averill, both of whom are plaintiff's treating physicians. The evidence shows that in October of 1969 plaintiff was admitted to the hospital following an episode of severe chest pain. The diagnosis upon release was that plaintiff suffered from a myocardial infarction and chronic coronary insufficiency. Electrocardiogram (EKG) reports from that time show that plaintiff had an abnormal electrocardiogram and an incomplete right bundle branch block. Plaintiff was readmitted to the hospital in March of 1970 with the same symptoms. Her EKG report and discharge diagnosis remained the same from her prior hospitalization. Plaintiff was reexamined by Dr. Averill in 1974. Her EKG continued to show an incomplete right bundle block. However, Dr. Averill also conducted a full heart catheterization but discovered no abnormalities. An electrocardiographic report dated July 5, 1974, was suggestive of a posterior wall myocardial infarction and/or a right ventricular enlargement. EKG reports from Dr. Averill dated July of 1983 and September 1985 are unchanged from the previous reports and continue to show a partial right branch bundle blockage. Neither Dr. Bowles nor Dr. Averill have been able to conclusively diagnose the cause of plaintiff's abnormal EKG readings and her chest pain. Plaintiff remains on therapy with a variety of prescription medications including Cardizem, Inderal, Isordil, and Nitroglycerin.

Plaintiff underwent treadmill stress testing in 1983 and 1984. Both tests had to be discontinued due to plaintiff's chest pain. The 1983 test was performed by Dr. Rosencrans, a consulting physician for the Secretary. His report states that the plaintiff's exercise tolerance was poor and that she experienced a great deal of fatigue and dizziness. The EKG taken at the test again shows an incomplete right bundle branch block. In 1984 a treadmill test was performed by Dr. Ross, also a consulting physician for the Secretary. Dr. Ross noted some EKG abnormalities but stated that the EKG results after exercise were non diagnostic.

It should be noted that even in the absence of a diagnosable cause for plaintiff's symptoms, none of the treating or examining physicians have discounted plaintiff's complaints of disabling chest pains. To the contrary, plaintiff's treating physician, Dr. Bowles, states that in his opinion plaintiff

is totally disabled and unemployable and that because of the severity of her chest pains she is unable to work at any kind of exertional type job and is not prepared by training or experience for any other kind of employment. Plaintiff's treating cardiologist, Dr. Averill states, in a report dated 1983, that from a practical standpoint he doubts very much that she is employable and that he believes her complaints to be legitimate but undiagnosable. Dr. Ross, the Secretary's consulting physician, states in a report dated September, 1984, that "because she seems to have chest pains so frequently, especially related to exercise, it would be difficult for her to be employed with those chest pains."

The ALJ's decision dated August 31, 1985, found the plaintiff not to be disabled. The ALJ first considered whether there was any basis for reopening the termination decision and concluded that there was no basis to revise or change that decision. In assessing plaintiff's claim for the period after September, 1983, the ALJ found that the plaintiff did not suffer from a severe impairment. The basis of this finding is the ALJ's position that because neither Dr. Ross nor Dr. Averill could specifically diagnose the cause of plaintiff's cardiac abnormality, the plaintiff could not provide substantial evidence of a severe impairment.

The ALJ also completely discredited plaintiff's testimony and subjective complaints. The ALJ found that because plaintiff testified that she had cared for her husband during his terminal illness her testimony regarding her subjective complaints of pain and other symptoms was simply not credible. In his findings, the ALJ states that claimant's testimony and that of her daughter regarding severe restrictions are not credible in light of the nature of the testimony, their demeanor, and the medical evidence contained in the record.

 In her motion for summary judgment, plaintiff raises several issues. The first issue before the Court is to determine the scope of the present appeal. The plaintiff did not request a hearing following the June, 1983, termination decision and there-fore that decision is a "final decision". Generally, an unappealed termination decision must be given *res judicata* effect and the Court is not at liberty to reopen the matter when reviewing a later decision. *See Gavin v. Heckler*, 811 F.2d 1195 (8th Cir.1987). An exception exists where the Secretary has reopened a claim of an erroneous termination and reconsiders the claim on the merits. However, the Secretary's decision not to reopen the case is not reviewable. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). In a case in which the Secretary does reopen the termination decision, the Court may review the Secretary's reconsidered decision. *Jelinek v. Heckler*, 764 F.2d 507, 508 (8th Cir.1985).

Plaintiff argues that the ALJ did, in fact, reopen the June, 1983, termination decision and that therefore the Court may properly review it. In support of this argument, the plaintiff points out that the ALJ stated that he had reviewed the entire record and found no basis to revise or change the termination decision and that the ALJ had received evidence and testimony regarding plaintiff's condition prior to the termination date.

 The Court cannot agree with plaintiff's position. The record is clear that the ALJ gave the June, 1983, termination decision *res judicata* effect. The ALJ cited the appropriate regulation, 20 C.F.R. § 404.957(c) and repeatedly states that he is only considering the issue of disability since the effective date of the termination decision, September, 1983. A fair reading of the report shows that the ALJ did consider plaintiff's request to reopen the termination decision but refused that request. The act of considering the evidence and denying a request to reopen a prior decision is not sufficient to show that the Secretary in fact reopened the prior decision. *Underwood v. Bowen*, 807 F.2d 141 (8th Cir.1986). The Secretary may also consider medical evidence obtained prior to the termination decision as relevant to the later application without being deemed to have reopened the termination decision. *Anderson v. Heckler*, 805 F.2d 801 (8th

Cir.1986). *Rohrich v. Bowen*, 796 F.2d 1030 (8th Cir.1986). The Court finds that the June, 1983, termination decision was not reopened by the ALJ and therefore must stand as the final decision of the Secretary. The Court, as did the ALJ, will only consider plaintiff's claims of disability as of the effective date of the termination decision, September, 1983.

█ The second issue before the Court is whether the Secretary's decision that the plaintiff did not suffer a severe impairment is supported by substantial evidence. The second step of the sequential evaluation process requires that a disability claimant be suffering from a severe impairment affecting the ability to work. 20 C.F.R. § 404.1520(c). This regulation has been upheld as consistent with the Act. *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). However, this step of the evaluation process is satisfied if the plaintiff shows that she suffers more than a slight abnormality which causes some significant limitation on the ability to do work. *Brown v. Bowen*, 827 F.2d 311 (8th Cir.1987).

The ALJ found that the plaintiff did not suffer from a severe impairment because plaintiff had failed to establish any "diagnosed medical condition" which justifies plaintiff's complaints. In reaching this conclusion, the ALJ relies upon several sources, including the statements of one of plaintiff's treating physicians, Dr. Averill, a cardiologist, that he could not reach a specific diagnosis and that plaintiff did not suffer "the usual type of vasospasic coronary artery disease," and the opinion of the Secretary's consulting physician, Dr. Ross, which reported that plaintiff had a normal coronary anatomy and that he was unable to determine the exact medical cause of plaintiff's complaints. The ALJ dismissed the report of plaintiff's other treating physician, Dr. Bowles, because the report is based primarily on medical evidence obtained prior to September 1983.

█ It is clear that in requiring plaintiff to provide an exact diagnosis of the cause of her coronary problems, the Secretary applied the wrong standard of law.

The present case is remarkably similar to *Sparks v. Bowen*, 807 F.2d 616 (7th Cir. 1986). In that case, the plaintiff displayed symptoms of a severe coronary impairment and complained of intermittent pain and fatigue. As in the present case, the physician's reports confirm the symptomology but could not provide a diagnosis of the exact cause. The Seventh Circuit held that the Secretary erred in finding that, because of the lack of a conclusive diagnosis, the plaintiff had failed to establish a severe impairment. The Court in *Sparks* ruled that all that was required was objective medical evidence showing some abnormality; as the Court stated, "[t]hat physicians do not know why a person has a condition does not render that condition less disabling." *Id.* at 618. The Eighth Circuit has reached a similar result in the context of reversing the Secretary's determination that plaintiff had not demonstrated a severe psychological impairment. *See Cook v. Heckler*, 739 F.2d 396 (8th Cir.1984).

In the present case, there is abundant medical evidence which shows that the plaintiff suffers some significant coronary impairment. Contrary to the ALJ's assertion, evidence predating the termination decision may be considered in regard to the later application. *See Rohrich, supra.* The evidence shows that plaintiff suffered symptoms which her treating physician, Dr. Bowles, diagnosed as a myocardial infarction and coronary insufficiency in 1969. Her electrocardiogram (EKG) at that time was abnormal and showed an incomplete right bundle branch block. The same results were found after hospitalization, again for chest pain and fatigue in 1970. In 1983, Dr. Rosencrans, a consulting physician for the Secretary, confirms this finding, noting that plaintiff was unable to complete a treadmill test due to fatigue and dizziness and that plaintiff's resting EKG again showed an incomplete right branch bundle block. Dr. Averill conducted an EKG in July, 1983, which also shows the incomplete right branch bundle block. A consulting examination by Dr. Ross in 1984 again shows some abnormality in the EKG readings. And a treadmill test conducted

by Dr. Ross was incomplete because plaintiff began suffering chest pain. Finally, in 1985, Dr. Averill reports that plaintiff's EKG remains unchanged.

Therefore, because the medical evidence shows that there is indeed abundant medical documentation supporting plaintiff's complaint, the Secretary's decision that plaintiff does not suffer a severe impairment must be reversed as it is not supported by substantial evidence.

▮▮▮ Plaintiff's motion for summary judgment also attacks the Secretary's determination that plaintiff's subjective complaints are not credible. As stated above, the Secretary based this decision on plaintiff's demeanor during testimony, the objective medical evidence, and one alleged inconsistency drawn from the record. It is very clear that the Secretary's credibility determination cannot stand. The standard for assessing the credibility of a disability claimant's subjective complaints was set forth plainly and finally in *Polaski v. Heckler*, 751 F.2d 943 (1984), as follows:

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties in treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. The adjudicator is not free to accept or reject claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the record as a whole.

*Id.* at 943, *quoting Polaski v. Heckler*, 739 F.2d 1320, 1321–22 (8th Cir.1984).

▮▮▮ Failure to follow the *Polaski* analysis regarding the credibility of plaintiff's subjective complaints is reversible error. *Herbert v. Heckler*, 783 F.2d 128 (8th Cir.1986). In the instant case, it is clear that the Secretary made no effort to comply with the *Polaski* analysis. The ALJ's decision does not discuss the *Polaski* factors, but instead relies on the plaintiff's demeanor at the hearing, the purported lack of medical evidence, and the fact that plaintiff's care of her dying husband may be considered inconsistent with her complaints. As stated above, the fact that plaintiff's physicians were unable to diagnosis her malady does not preclude it from being considered disabling. Regarding the plaintiff's demeanor during the hearing, the ALJ does not cite to any specific fact or impression which causes him to disbelieve the plaintiff's testimony. In the opposition to plaintiff's motion for summary judgment, defendant suggests that the Court assume that the ALJ considered all of the *Polaski* factors because he mentions that plaintiff cared for her terminally ill husband for a period of time. The actions of an administrative agency are to be judged only on the stated rationale of the decision maker. The Court cannot and will not speculate as to what the ALJ found in making his credibility determination. *Bowen v. American Hospital Association*, 476 U.S. 610, 626–27, 106 S.Ct. 2101, 2112, 90 L.Ed.2d 584 (1986). This is especially true in a case such as this where it is apparent that the ALJ was not following, and possibly not aware of, the applicable legal standard governing his decision.

▮▮▮ Examining the record as a whole in the framework set forth in *Polaski*, the Court finds that there is substantial evidence supporting plaintiff's claim of disabling pain. There is at least some objective medical basis, the abnormal EKG readings and the past medical history, supporting plaintiff's subjective complaints. Furthermore, there are the observations of third parties, including the plaintiff's daughter, her treating physicians and the Secretary's consulting physician, which support plaintiff's claim of disabling chest pain upon any degree exertion. The plaintiff and her daughter testified regarding plaintiff's dai-

ly activities. This testimony was that the plaintiff was largely unable to conduct normal activities and that her abilities to do housework and drive were sharply curtailed. The evidence also shows that plaintiff suffered sharp pain on a frequent basis, usually, but not always, precipitated by any sort of physical exertion. The evidence also shows that plaintiff's treating physician, Dr. Bowles, had his patient on a therapy of prescribed medicine, including Nitroglycerine tablets for the relief of chest pain, and that plaintiff followed this regimen. Further, Dr. Bowles' treatment of the plaintiff was concurred in by Dr. Averill. The plaintiff testified that although the prescription drugs, particularly the Nitroglycerine, provided some relief, this relief was not of a preventitive nature but was merely reactive to the incidents of pain. The evidence is also clear that plaintiff did suffer functional restrictions as a result of the alleged pain. Most convincing are the treadmill tests conducted by the Secretary's consulting physicians which had to be discontinued due to plaintiff's chest pain arising from the exertion. Upon review of the record, the Court finds that there are not inconsistencies on the record as a whole which could justify the ALJ in discounting plaintiff's subjective complaints of chest pain.

For the reasons stated above, it is obvious that the Secretary's decision must be reversed. Ordinarily, where the Secretary erroneously denies benefits at an early stage in the proceedings, the proper course is to remand the case to the Secretary for redetermination. "However, where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his disability by medical evidence on the record as a whole, we find no need to remand." *Gavin v. Heckler*, 811 F.2d 1195 (8th Cir.1987). In the instant case there is no substantial evidence which would support a conclusion other than that the plaintiff is disabled. There is objective evidence that plaintiff suffers some undiagnosable abnormality of her heart. There is no substantial evidence contradicting plaintiff's claim of disabling pain precipitated by physical activity. Fur-

thermore, there are the opinions of plaintiff's treating physicians and the Secretary's consulting physician that plaintiff is unemployable due to her heart condition. The Court finds that in this exceptional case, the record so overwhelmingly supports plaintiff's claim for disability insurance that a remand to the Secretary for further proceedings is inappropriate. *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir.1984).

Therefore, it is hereby ORDERED that plaintiff's motion for summary judgment is GRANTED.

Accordingly, it is

ORDERED (1) to compute plaintiff's disability benefits using a disability onset date of September, 1983; it is further

ORDERED (2) that on or before August 1, 1988, plaintiff's counsel, if desired and appropriate, shall file an application for attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 or in the alternative file an application for fees under 42 U.S.C. § 406(b); and it is further

ORDERED (3) that the Clerk shall not enter any judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure until further order of this Court. A further Order directing the Clerk to enter such judgment shall be entered promptly after the Court determines whether attorney's fees should be awarded under the circumstances of this case.

IT IS SO ORDERED.

## ON APPLICATION FOR FEES

On July 19, 1988, this Court entered an Order granting plaintiff's motion for summary judgment and ordering the defendant to compute plaintiff's disability benefits using a disability onset date of September, 1983. Presently before the Court is plaintiff's application for fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Defendant's counsel has advised the Court that the parties have reached an agreement that an award under the EAJA is proper in the amount of $2,750. Upon review of the record and the

plaintiff's application, the Court finds that this figure is both equitable and awardable under the law.

Accordingly, it is hereby ORDERED

(1) the plaintiff's application for attorney's fees in the amount of $2,750 under 28 U.S.C. § 2412 should be and the same is hereby GRANTED; it is FURTHER ORDERED

(2) that consistent with the Order of July 19, 1988, the Clerk of this Court shall enter final judgment on a separate document in favor of plaintiff and against defendant in accordance with Rule 58 of the Federal Rules of Civil Procedure. Said judgment shall also reflect our Order granting plaintiff's request for attorney's fees in the amount of $2,750 pursuant to 28 U.S.C. § 2412.

IT IS SO ORDERED.