IT IS HEREBY ORDERED that defendant's motion for summary judgment (Dkt.# 70) is GRANTED.

IT IS HEREBY FURTHER ORDERED that defendant's motion for partial summary judgment (Dkt.# 71) and to compel and to strike (Dkt.# 54) are DENIED as moot.

2000 D.S.D. 15

Sharri PETTIJOHN, Plaintiff,

v.

Kenneth S. APFEL, Commissioner, Social Security Administration, Defendant.

No. Civ.98–1028.

United States District Court, D. South Dakota, Northern Division.

Feb. 11, 2000.

---

7. Furthermore, the facts do not support plaintiff's claim that it was reasonable to expect that a constructive discharge claim would have been discovered if an investigation had been conducted. A constructive discharge arises only when a reasonable person would find the conditions of employment intolerable. To act reasonably, an employee has an obligation not to assume the worst and not to jump to conclusions too quickly. *Tidwell v. Meyer's Bakeries, Inc.,* 93 F.3d 490, 494 (8th Cir.1996). Plaintiff has assumed that she was treated unfairly and, thus, constructively discharged. That is insufficient. *Clowes v. Allegheny Valley Hosp.,* 991 F.2d 1159, 1162 (3rd Cir.1993) ("unfair and unwarranted treatment is by no means the same as constructive discharge"); *Stetson v. NYNEX Service Co.,* 995 F.2d 355, 361 (2nd Cir.1993) (employee's dissatisfaction with assignments and criticism of his work insufficient to establish constructive discharge).

Catherine R. Enyeart, Enyeart & Koehn, Hot Springs, SD, for plaintiffs.

Diana J. Ryan, U.S. Attorney's Office, Rapid City, SD, for defendants.

## ORDER

KORNMANN, District Judge.

[¶ 1] Sharri D. Pettyjohn ("claimant") filed an application for social security disability benefits on July 19, 1995, claiming that she had been unable to work since July 15, 1992 (AR 86). Her claim was denied. She requested reconsideration. The claim was again denied. An Administrative Law Judge ("ALJ") held a hearing at which claimant appeared without counsel. She had counsel in connection with her pending workers' compensation claim but had no legal representation at the social security hearing. The record does not reflect whether claimant was ever successful in her worker's compensation claim against the entity that was her employer when she quit work in July of 1992. Claimant and a vocational expert were the only witnesses before the ALJ. Claimant's husband was present but did not testify. The ALJ ruled on March 17, 1997, that claimant was not eligible for benefits under Titles II and XVI of the Social Security Act. Counsel then appeared for claimant and requested a review of the ALJ's decision by the Appeals Council. After review was denied on June 6, 1998, claimant commenced this action. After issue was joined, both defendant (Doc. 15) and plaintiff (Doc. 11) moved for summary judgment. This Court referred the motions to U.S. Magistrate Judge Carlyle E. Richards who entered proposed findings and a recommendation (Doc. 18) on December 7, 1999, recommending, in effect, that defendant's motion be granted and plaintiff's motion be denied. Claimant filed timely objections (Doc. 19). This Court has now read the transcript and has otherwise conducted a *de novo* review of the entire record. References to the transcript will be T followed by the page number. References to the administrative record will be AR followed by the page number.

[¶ 2] Claimant presented, not to the ALJ but to the Appeals Council, reference material on reflex sympathetic dystrophy (although there is no diagnosis in this case of reflex sympathetic dystrophy), a report from Sharon Green, M.Ed., dated May 10, 1998, (almost six years after the claimed onset of disability) and an inconclusive report from Cynthia Anderson Weaver, M.D., dated September 15, 1997 (more than five years after the claimed onset of disability). Claimant was specifically advised by the Appeals Council that the issue before them was whether or not claimant was disabled beginning on or before March 17, 1997 (the date of the ALJ's decision). The issue was not whether she may have been disabled when she saw or consulted with Ms. Green or Dr. Weaver. Claimant was instructed that she could file a new application as of some date after March 17, 1997. Claimant has apparently not done so. The last date claimant was last insured to qualify for benefits under Title II of the Act would have been December 12, 1997. See T144. No theory or claim was ever presented to the ALJ about any mental impairment, either separately or in conjunction with a physical impairment.

[¶ 3] Claimant's case rested solely on subjective complaints. It is true that the ALJ "may not disregard a claimant's subjective complaints solely because the objective medical evidence does not **fully**

**support** them." *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984) (emphasis supplied). In the present case, the objective medical evidence does not support the subjective complaints "at all." Nothing as to this claimant has been "medically determined." We know also that "subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Id.* The *Polaski* factors include: (1) daily activities of the claimant, (2) frequency, duration and intensity of pain, (3) precipitating and aggravating factors of pain, (4) dosage, effectiveness of pain medication and side effects therefrom, and (5) functional restrictions. *Id.* The lack of any objective medical evidence in support of claimant's testimony, and any inconsistencies in the evidence as a whole, are factors which the ALJ may consider in weighing the credibility of the claimant's subjective complaints. *Cruse v. Bowen,* 867 F.2d 1183, 1186 (8th Cir.1989). The opinion of a treating physician is entitled to great weight, *Chamberlain v. Shalala,* 47 F.3d 1489, 1494 (8th Cir.1995) (citing *Ward v. Heckler,* 786 F.2d 844, 846 (8th Cir.1986)), although such opinion is not conclusive.

[¶ 4] "Under the relevant statute, 'disability' is defined as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months.' *See* 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). '[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinic and laboratory diagnostic techniques.' *See* 42 U.S.C. § 423(d)(3); *see also* 20 C.F.R. § 404.1508, § 404.1527(d)(2), § 404.1527(d)(3), § 404.1528(b), § 404.1528(c), § 404.1529(a), § 404.1529(b), § 404.1529(c)(2). 'An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability ... there must be medical signs and findings, established by medically acceptable clinical or laboratory

diagnostic techniques, which show the existence of a medical impairment.' See 42 U.S.C. § 423(5)(A); see also 20 C.F.R. 404–1508, § 404.1512(b)(1), § 404.1527(a)(1), § 404.1528, § 404.1529(a), § 404.1529(b), § 404.1529(c)(2)." *Brown v. Shalala,* 15 F.3d 97, 98 (8th Cir.1994).

[¶ 5] The sole task on review is to determine whether the denial of benefits is supported by substantial evidence in the record as a whole. *Rappoport v. Sullivan,* 942 F.2d 1320, 1322 (8th Cir.1991). Substantial evidence may be less than a preponderance of the evidence if it is enough that a reasonable mind might find it adequate to support the conclusion reached. *Oberst v. Shalala,* 2 F.3d 249, 250 (8th Cir.1993). This task includes the evaluation of the evidence in the record which supports the decision of the ALJ as well as that evidence which detracts from it. *Turley v. Sullivan,* 939 F.2d 524, 528 (8th Cir.1991). It is within the authority of the ALJ to resolve any conflicts among the opinions of treating and examining physicians. *Cabrnoch v. Bowen,* 881 F.2d 561, 564 (8th Cir.1989). In the present case, there is no conflict of any kind between or among any of the physicians. The ALJ may consider that the absence of objective medical evidence does not support the degree of pain complained of by the claimant. *Barrett v. Shalala,* 38 F.3d 1019, 1022 (8th Cir.1994).

[¶ 6] This Court has considered *Ragsdale v. Secretary, Dept. of Health, Etc.,* 623 F.2d 528, (8th Cir.1980): "The Social Security Act does require that the claimant establish his physical impairment by 'medically acceptable clinical and laboratory diagnostic techniques.' 42 U.S.C. § 423(d)(3). However, a social security claimant is not required to establish the full extent of his subjective symptoms with objective medical evidence." *Id.* at 530. In *Ragsdale,* however, the claimant's treating physician "found that he was disabled from working." The only disagreement between the treating and the consulting physicians was as to the severity of the

claimant's respiratory problems. The facts as to Mr. Ragsdale are entirely unlike the present case. No medical expert presented any such evidence to the ALJ and there is nothing in the record to show that claimant was disabled from working.

[¶ 7] This Court has also considered *Anderson v. Heckler*, 805 F.2d 801 (8th Cir.1986): "On remand the ALJ should also give careful consideration to appellant's subjective complaints of pain and a nervous disorder. An ALJ may not disregard subjective complaints solely because they are not supported by objective medical evidence. *Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir.1986), *citing Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir.1984). The absence of objective medical evidence supporting the claimant's subjective complaints is only one factor to consider. *Conley v. Bowen*, 781 F.2d at 146. Subjective complaints may be discounted, however, if there are inconsistencies in the record as a whole, but not discounted solely on the basis of the ALJ's personal observation of the claimant. Although the ALJ referred to Dr. Zelnick's belief that appellant tended to overemphasize her complaints, the ALJ cites no evidence of appellant's daily activities, prior employment or symptoms that is inconsistent with the existence of pain. *Id.*" *Id.* at 806. In *Anderson*, no vocational expert had testified. Anderson had been diagnosed by a physician as having "chronic obstructive lung disease and anxiety depression." Also, she had been diagnosed as having had "a cerebrovascular accident of the right temporal region (CVA)" and a pulmonary function test showed she had a "mild to moderate degree of obstructive lung disease." A treating physician had reported that he did not believe that Anderson "would ever be able to participate in a gainful occupation due to severe chronic degenerative disc disease, generalized arthritis and chronic obstructive lung disease." The consulting physician also believed that Anderson had "chronic obstructive lung disease" and that her back pain was the result of her prior surgeries. One doctor found objective findings. The

facts and the record in *Anderson* are entirely different than the facts and the record in the present case.

[¶ 8] Claimant attempts to rely on a post-hearing report from Sharon Green who expressed the opinion that claimant is suffering from recurrent major depression and anxiety disorder due to her general medical condition. Although Ms. Green certainly has many qualifications, she would not have the qualifications to know the "general medical condition" of the claimant, or more importantly, what the medical effects of such conditions would be. Ms. Green describes panic attacks and some obsessive-compulsive symptoms, stating that claimant's "experience of pain and disability is clearly real." AR 153. Ms. Green did not see the claimant until May 29, 1997, after the ALJ had rendered a decision. She did not issue a report until May 10, 1998. T 153. Ms. Green is not a psychiatrist or psychologist. She has a master's degree in education. She lists LPDC after her name, an indication that she is perhaps a "licensed professional counselor" although the designation in SDCL 36–32–12 does not describe the title of LPDC. In any event, she is clearly not a licensed professional counselor-mental health and does not meet the qualifications set out at SDCL 36–32–42. As a matter of law, she may not present medical or psychological opinions and her opinions offered in this case are beyond her expertise. She would also invade the fact finding province of the ALJ. In addition, there would be no foundation for her conclusions since she reports that the claimant's mental condition has been worsening since she first saw her. A remand to the ALJ would make no sense as to this "evidence."

[¶ 9] Looking at Doc. 18, no objections have been made to proposed findings of fact 1, in general, through 23, and they will be considered with the correction of "hear" to "hair" in proposed finding 13. No objections have been made to proposed findings 24 and 30. Claimant is correct in her objections in stating that the magis-

trate should not have proposed findings of fact. Claimant suggests that the magistrate approached the matter *de novo* in finding facts. One could certainly gain that impression by placing form over substance. The magistrate clearly recognized the proper standard of review. In the "recommendation" or conclusion section (Doc. 18), the magistrate stated: "The undersigned believes that the record as a whole supports the findings and determination of the ALJ." As stated, the question is whether there is substantial evidence to support what the ALJ did. "We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case. *Benskin v. Bowen,* 830 F.2d 878, 883 (8th Cir.1987). We therefore reject . . . argument that the conclusory form of the ALJ's decision alone justifies remand." *Senne v. Apfel,* 198 F.3d 1065, 1066 (8th Cir.1999). This statement of the law applies to a report and recommendation from a magistrate as well as to a decision by an ALJ. This Court, therefore, will not adopt proposed findings. It is clearly not the function of this Court or of the magistrate to "find the facts." To do so would allow this Court to reverse the ALJ because some evidence, as it often does, may support an opposite conclusion.

■ [¶ 10] The magistrate has pointed to a great deal of the evidence in the record which substantially supports the decision by the ALJ. Claimant's treating physician, Dale R. Anderson, M.D., FACS, has not supported claimant's contentions. There is some other evidence not recited or not recited completely in the report from the magistrate. On July 30, 1990, Dr. Anderson gave the claimant a five per cent impairment rating of the right upper extremity "as a result of her subjective complaints of pain." This rating is, of course, not of the body. It is but of one extremity and it is common knowledge that this would translate into a total body rating of very little. This is not to say that an impairment rating is the social

security disability test but this evidence is of some significance. On December 13, 1990, Dr. Anderson reported that the claimant's motor function "is excellent." On August 6, 1991, Dr. Anderson stated: "I believe her symptoms will gradually subside, and I would anticipate she can return to her work as a typist by the first of September." On September 16, 1991, the claimant had not returned to work and Dr. Anderson thought she "could work as a secretary or receptionist, but I would not like to see her return to a job where she is required to operate a keyboard constantly and throughout the day." He found that her skin was soft, indicating no objective findings of pain or discomfort. He found her nerve function was intact, finger motion normal and muscle function normal. He said that "her only impairment appears to be the subjective complaints of pain and throbbing." On October 25, 1991, Dr. Anderson thought that the claimant "could function at this time" if she had a job that had a variety of tasks. As of May 27, 1992, the claimant had been working nine to ten hours per day as a cashier and was quitting her job and moving away because she was to be married. The claimant apparently did not tell Dr. Anderson she was quitting her job because she could no longer do her job. She was to be married and was leaving the area. In August of 1992, Dr. Anderson refused a request for a steroid injection because the "pain is diffuse, involves both upper extremities, and thus there was no focal area to inject or triggerpoint (sic) to relieve." This report speaks of strictly subjective matters from the standpoint of the claimant. The claimant told Dr. Anderson she had been carrying a lot of boxes at home, cutting and pulling weeds, and cleaning house. In addition to what is quoted by the magistrate as to the medical record of September 30, 1992, it is noted that the claimant had not only been riding a horse but had been roping cows from a horse and had rope burns on her fingers. On this same date, he reports that she had "diffuse soreness and tenderness in her ribs, shoulders,

arms and forearms, and ropeburns (sic) on her fingers. Her elbows hurt. Her hand and wrist function has not changed ..." There is no report of any functional capacity test. Again, Dr. Anderson simply recorded what the claimant was telling him. He said she should not work more than 35–40 hours per week. On November 30, 1992, Dr. Anderson reported that the claimant was telling him that she had increased symptoms recently in the left part of her neck, shoulder, elbow and forearm. She was telling him that motions of the wrist and elbow made her left shoulder and neck hurt more. On January 11, 1993, the claimant was reporting that the forearms and elbows were "diffusely tender and sore to muscle palpation." Dr. Anderson stated that her subjective complaints would be considered "slight to moderate in degree." He stated there were "no specific objective factors of impairment." He did not suspect "degenerative arthritis." He stated: "There does not appear to be any acute abnormality or obvious problem." He estimated that she had a ten percent impairment of the left upper extremity "based on her pain and weakness and limited endurance." She did not again seek medical care for more than nine months. On September 22, 1993, the claimant refused an MRI because she had problems with claustrophobia. Open MRI's are now available but the record does not reflect whether that was an option in 1993. He stated: "Her function and use of the upper extremities appears to be stable and essentially normal, but she has subjective complaints." On October 20, 1993, the EMG showed no nerve compression. There were "no objective findings or changes on testing." T141. Dr. Anderson had no specific recommendations for eliminating her discomfort. He again expressed his opinion that she was capable of light duty work but could not work on an assembly line or do repetitive motion work. Dr. Anderson saw the claimant again on September 29, 1994, almost one year after her previous visit. His opinion was that the claimant develops **"bizarre symptoms** of tingling, pins and needles and aching ..." (emphasis supplied). Bizarre symptoms would be the opposite of objective findings of any kind. The use of such a description would indicate some considerable skepticism on the part of claimant's treating physician. On January 6, 1995, Dr. David Lang expressed his opinion, apparently also as a treating physician: "I do not feel this is RSD. Assessment is bilateral arm pain, etiology unclear." Thus, instead of a diagnosis of reflex sympathetic dystrophy, the record reveals the reverse. Bilateral arm pain is not something that can be objectively measured or even observed. Again, it would be based strictly on what the patient says. There was no indication of osteoporosis. Dr. Lang reported that he suggested the possibility of a rheumatoid panel but the claimant declined, stating that the workers' compensation insurance company would not pay for it. From September of 1994 until August 10, 1995, claimant did not see Dr. Anderson. She saw Dr. Anderson again in December of 1995 and again in September of 1996. On September 25, 1996, Dr. Anderson reported that "[S]ubectively her condition is deteriorating; clinically, her condition remains the same." On September 15, 1997, rheumatologist Cynthia Weaver, M.D., saw the claimant. Dr. Weaver found "no joint abnormalities in the upper extremities." The ALJ found that failure to seek medical treatment closer to claimant's home and failure to seek medical care more consistently would be inconsistent with claimant's subjective statements about her pain and condition. Allegations of a disabling condition are inconsistent with the failure to seek regular medical treatment. *Ostronski v. Chater,* 94 F.3d 413, 419 (8th Cir.1996). *See also Wingert v. Bowen,* 894 F.2d 296, 299 (8th Cir.1990) (noting infrequent medical treatment suggests condition is not disabling).

[¶ 11] If anything, the ALJ was overly generous to claimant. For example, the ALJ found that the claimant was not hired at a bank because she could not carry "tills" of money and coins. There was no

evidence to support such a finding. The question asked was: "Well, what if they would have hired you?" The claimant answered: "I would have tried it." There was no reference to "tills" or why she was not hired. Claimant talked with a bank teller who told the claimant the tray weighed about 30 pounds and the claimant said: "Oh, really." Claimant did not state she could not perform the work. The record is clearly contrary to the finding of the ALJ which favored claimant in that regard. She testified that she applied at the bank, told them about her arms, and "I felt I was qualified, but I don't know. I didn't get hired." T 12. Failure to be employed after making application certainly does not in itself establish or even indicate physical inability to perform the job. The claimant felt she was qualified to perform the job and that is undisputed.

[¶ 12] The Commissioner must use the familiar five-step sequential evaluation. The Commissioner determines: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment— one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Kelley v. Callahan*, 133 F.3d 583, 587–88 (8th Cir.1998).

[¶ 13] The ALJ stated in finding three: "The medical evidence establishes that the claimant suffers from carpal tunnel syndrome, status post surgical releases, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." The only problem with this finding is that it is, in part, meaningless. There is no medical evidence of any kind that she suffers from any known medical condition and certainly not from carpal tunnel syndrome. If she had carpal tunnel syndrome, she had surgery to correct the condition. That is perhaps reflected in the statement of the ALJ that the surgery had, in effect, released or relieved the syndrome. After a normal period of recuperation, the fact that one has had surgery is immaterial unless some complications have arisen from the surgery or the surgery is shown by satisfactory evidence to be not successful. There is no medical evidence in the record that the surgery caused any complications or that the surgery was not successful. No person with any medical background has ever so stated or even so implied. In addition, there is nothing in the record at all to "tie into" anything the subjective complaints about pain throughout the body that would obviously have no relationship to claimed problems with the carpal tunnels. The ALJ's finding does find substantial support in the record, however, to the extent that the claimant does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. It is clear that the ALJ rejected the claimant's allegations and testimony as to the severity of her pain and other claimed symptoms. See ALJ finding four. It is also clear that the ALJ found that claimant was not under a "disability" as defined in the Social Security Act. See finding 13. Although the ALJ did not quote the Act, we know that 42 U.S.C. § 423(d)(1)(A) defines "disability" as an "inability to engage in any substantial gainful activity by reason of any *medically determinable physical or mental impairment* ... (emphasis supplied)." Again, as stated, there is no medical evidence of any underlying impairment. There is no diagnosis of any medically determinable physical or mental impairment. The best that could be said for claimant is that Dr. Anderson at one time "suspected" reflex sympathetic dystrophy.

Even considering the new evidence presented to but not considered by the Appeals Council, such evidence presented only speculation and conjecture. None of it would change the outcome of this case. Thus, there would have been no reason for the ALJ to have gone beyond the third or even the second sequential step of evaluation. Under step two, she did not have a medically severe impairment or combination of impairments. The fact that the ALJ went to the third step and beyond is mere surplusage. "The claimant has 'the burden ... of showing that [s]he has a medically severe impairment or combination of impairments, and ... that the impairment prevents [her] from performing [her] past work.' *Bowen v. Yuckert,* 482 U.S. at 146, n. 5, 107 S.Ct. at 2294 n. 5; *see also* 20 C.F.R. § 404.1512(a). Only if the 'sequential evaluation process proceeds to the [last] step does the government bear the burden of showing that 'the claimant is able to perform work available in the national economy ... If the process ends at [at earlier step] the burden of proof never shifts' to the government. *Bowen v. Yuckert,* 482 U.S. at 146–47, n. 5, 107 S.Ct. at 2294 n. 5." *Brown v. Shalala,* 15 F.3d 97, 99 (8th Cir.1994). The process as to the claimant in this case should have ended much earlier than the fifth step. We know also that "[U]nder both the statute and the applicable regulations, the clinical and laboratory techniques used to arrive at a diagnosis must be 'medically acceptable.' *See* 42 U.S.C. § 423(d)(3), § 423(d)(5)(A), and 20 C.F.R. § 404.1508, § 404.1527(a)(1), § 404.1527(d)(2), § 404.1528(b), § 404.1528(c), § 404.1529(b), § 404.1529(c)(2)." *Brown* at 99. Again, in the present case, there is no medical diagnosis, reliable or even unreliable.

[¶ 14] In judging, the ALJ obviously considered the activities of the claimant. We know she had been horseback riding and roping calves, extremely taxing activities physically. She had inquired at convenience stores about employment but testified she would have to "pump gas and put oil and windshield washer fluid in vehicles." T12. Such testimony frankly flies in the face of all common sense and all common knowledge. Convenience stores offer no such services. The customer is "on his own" at such stores. She testified: "There's a lot of things I do that I have to do." T13. She has to drive over 100 miles to a doctor "and there's nothing they can do, other than probably give me a pill." T15. There is no indication from the record that the medications prescribed for or used by the claimant would be at all consistent with disabling pain. Dr. Anderson did not impose any significant medical restrictions on claimant's activities. In fact, he encouraged her to exercise and exert herself physically. All of these are inconsistent with disabling pain. *See Smith v. Shalala,* 987 F.2d 1371, 1374–75 (8th Cir.1993). She does crossword books. She has no problem sitting down. T16. Doing crossword books obviously involves repeated hand and finger movements, writing, erasing and re-writing, sometimes more than once for each word. She nevertheless testified that she could do a crossword puzzle in approximately five minutes. Pain would thus obviously not be interfering with claimant's ability to concentrate. She obviously has very good concentration skills. She is seated about half the day, watching TV or doing crossword books. T17. She goes up and down the stairs to her basement a lot. T17. The ALJ could also have taken into account the question of the claimant posed to the ALJ, namely whether she would have to move from the small town in which she lived "and leave my family."

[¶ 15] Claimant's primary attack on the decision by the ALJ is that he failed to address step three of the sequential evaluation set out at 20 CFR § 404.1520(a) through (f). Step three presents the question whether the claimant meets or equals a listed impairment. The record is clear that step three was not necessary. Claimant argues that the ALJ should have *sua sponte* summoned a medical expert or advisor to assist in that analysis. While certainly the ALJ must see to it that the

 

record is fully and fairly developed, which duty is enhanced when a claimant is not represented by counsel, it is not the function of the ALJ in every case to be calling expert witnesses to support one side or the other. The ALJ also has an obligation to be an impartial judge. After all, the ALJ cannot be expected to function as an attorney for the claimant. There is always some inherent disadvantage to proceeding without counsel and the ALJ cannot be expected to remove all such disadvantages. The ALJ had a great deal of evidence before him from the claimant's treating physicians. Apparently, all the medical records and reports then in existence were before the ALJ. In an abundance of caution, the ALJ summoned a vocational expert to present evidence. This Court is unable and unwilling to conclude that, in this case, the ALJ failed to develop the facts fully and fairly.

[¶ 16] This Court finds that the recommendation of the U.S. Magistrate Judge should be accepted and adopted, as modified herein, that the objections of the claimant should be overruled, that a summary judgment should be granted to defendant, that the motion of claimant for a summary judgment should be denied, and that the decisions of the ALJ and the Appeals Council should be affirmed, the same being based upon substantial evidence.

### ORDER

[¶ 17] Now, therefore,

[¶ 18] IT IS ORDERED:

1) The recommendation of the U.S. Magistrate Judge (Doc. 18) is accepted and adopted, as modified herein.

2) The motion of the defendant (Doc. 15) for a summary judgment is granted and the motion of the plaintiff (Doc. 11) for a summary judgment is denied.

3) The objections of the claimant (Doc. 19) to the magistrate's report and recommendation are overruled.

4) The final administrative decisions to the effect that the claimant is not eligible for benefits under Titles II and XVI of the Social Security Act as of March 17, 1997, are affirmed.